## Cowden, Appellant, v. Aetna Casualty and Surety Company.

Argued September 30, 1955.   Before STERN, C. J., STEARNE, JONES, MUSMANNO and ARNOLD, JJ.

*Earl F. Reed*, with him *Joseph E. Madva, Earl F. Reed, Jr.* and *Thorp, Reed & Armstrong*, for appellant.

*Charles E. Kenworthey*, with him *Gilbert J. Helwig* and *Reed, Smith, Shaw & McClay*, for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, June 28, 1957:

This appeal grows out of an action in trespass by the plaintiff for the recovery of damages from the liability-insurer of his automobile trucks because of the insurer's refusal to participate in a proposed settlement of a law suit against the insured and another jointly for personal injuries sustained by a third person in a collision between one of the insured's trucks and a passenger automobile of the other alleged tort-feasor. The suggested settlement contemplated payment by the defendant insurer of full coverage under its policy and was designed to effect a saving to the insured in the quantum of the excess liability he would otherwise be required to pay if the ultimate verdict was greater than the amount of the proposed settlement which is what later happened. In his suit against The Aetna Casualty and Surety Company, his insurer, Cowden, as plaintiff in the instant action, alleged that the insurance company was guilty of "negligent, willful, reckless and fraudulent disregard . . . of its fiduciary obligations and duties to plaintiff" whereby the plaintiff suffered the damages claimed.

At trial, the plaintiff rested his case solely on the charge of bad faith. The jury returned a verdict for the plaintiff for the full amount of his claim. The court en banc (one judge dissenting) entered judgment for the defendant n.o.v. on the ground that the evidence was insufficient to justify a finding by the jury that the defendant was guilty of bad faith in refusing to pay voluntarily full coverage under its policy in order to obtain settlement of the law suit against its insured. The propriety of the action of the court below in the premises is the question which the plaintiff's present appeal brings up for review.

The tort action out of which the present controversy arose was instituted by Walter Phillips against John R. Cowden (the present defendant's insured) and Gilbert H. Latham jointly to recover damages for injuries suffered by Phillips when Latham, in whose automobile Phillips was a passenger, drove his vehicle into a truck of Cowden which was stopped on the highway. The accident occurred on a clear, dry morning in February, less than an hour before sunrise. Latham was proceeding in his automobile, with his passenger Phillips, along the concrete highway at a speed of thirty-five to forty miles per hour when Phillips noticed a "ball of smoke" on the right-hand side of the road, some three or four hundred feet ahead. Phillips called to Latham to look out and cautioned that he had better stop, but Latham nevertheless continued to drive on into the smoke and crashed into the rear of Cowden's truck with consequent serious injury to Phillips. The driver of the truck had stopped it, at least partially on the highway, after smelling smoke and noticing a light beneath the floor boards of the truck. At the time of the impact from Latham's car, the driver of the truck was under it, using an extinguisher on a fire around the emergency brake. The smoke, which Phillips had seen and which evidently obscured the truck from Latham's view, was caused by the action of the fire extinguisher on the flame.

Cowden carried insurance on his truck against public liability in the maximum sum of $25,000 under a policy issued by the defendant company which provided, with respect to the settlement or defense of claims or suits against the insured for liability for injury caused by the insured vehicle, as follows: "It is further agreed that as respects insurance afforded by this policy the Company shall (a) defend in his name and behalf any suit against the Insured alleging such injury or destruc-

tion and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the Company."

When Phillips instituted suit against Latham and Cowden jointly in Washington County to recover damages for his injuries, Aetna promptly assumed the defense of its policy holder, Cowden, and referred the case for such purpose to H. Gilmore Schmidt, Esq., of Washington County, as counsel. At the same time, by letter, Aetna suggested to Cowden that, in view of the fact that the damages sought by Phillips (viz., $75,000) exceeded the maximum limits of its policy's coverage (viz., $25,-000), Cowden might wish to employ private counsel at his own expense to protect his personal interest above the limit of the insurance. Cowden did not, however, engage private counsel, and the case proceeded to trial. Latham was insured by another company for liability for personal injury by automobile in the maximum sum of $10,000 per person per accident.

The case was tried three times. It first terminated in a mistrial before the defendants' case had been completed. The second trial resulted in a $100,000 verdict for the plaintiff against Latham and Cowden jointly. Immediately following rendition of this verdict, Cowden engaged the law firm of Thorp, Reed and Armstrong of Pittsburgh to represent his personal interest. Aetna engaged John M. Reed, Esq., of Pittsburgh, as consulting counsel. He, with J. Roland Johnston, of the Thorp, Reed and Armstrong firm, and Schmidt, defendant's trial counsel, working together, presented motions on behalf of Cowden for a new trial and for judgment n.o.v. The court refused the motion for judgment n.o.v. but awarded the defendant a new trial on the ground that the great weight of the evidence indi-

cated that there was no liability on the part of Cowden. Judge CUMMINGS, the trial judge, speaking for the court en banc in disposing of the after-verdict motions, said,—"The great weight of the evidence points to the conclusion that the driver of the Cowden truck was not negligent . . . . We also think that in any future trial, under the peculiar circumstances if the same are as developed in this case, serious consideration must be given to the question of proximate cause . . . We are in agreement that the amount of the verdict is excessive." Latham's insurer then paid into court the maximum limit of its liability, namely, $10,000. Thenceforth, Latham's interest was not represented. All parties were agreed that no further recovery could be obtained from Latham as he possessed no leviable assets.

Phillips and Cowden brought cross appeals to this court from the order granting a new trial. We affirmed. The motion for judgment n.o.v. was neither considered nor passed upon although, in the opinion accompanying the order of affirmance, it was observed by way of dictum that, "In a number of strikingly similar cases" we had decided that the issues of negligence and proximate cause should be determined by the jury: see *Phillips v. Cowden*, 370 Pa. 288, 291, 88 A. 2d 404.

During the subsequent retrial, which Johnston was attending as Cowden's private counsel, he became convinced that the case should be settled. Never having before seen Phillips, the claimant, Johnston was greatly impressed with the sympathetic appeal to the jury Phillips's obvious serious physical condition would have. Then, too, the verdict in the preceding trial had been for $100,000 and the evidence that was being adduced at the current trial was substantially the same as at the prior trial. On the evening of the second day of the retrial, Johnston reported his conclusions, as

above indicated, to Earl F. Reed, Esq., of the Thorp, Reed and Armstrong law firm. Thereupon Earl F. Reed contacted George Bloom, Esq., the plaintiff's attorney, concerning the prospect of a settlement of the case. Bloom agreed to recommend to Phillips settlement for $45,000 to include the $10,000 already paid into court by Latham's insurer. Earl F. Reed held to the opinion that the settlement should not exceed $42,500 and discussed that point with Bloom. Johnston then prepared a letter addressed to Schmidt which he personally delivered to Schmidt during the noon recess the following day, i.e., the third day of the trial. The letter stated, inter alia, that in view of the history of the case there existed a great possibility of a large verdict in the plaintiff's favor; that such a verdict would pose a serious financial problem for Cowden; that an offer had been received for a settlement at $45,000 with a possible reduction to $42,500; that Cowden was willing to contribute $7,500 to effect the settlement and requested Aetna to negotiate with Phillips's attorney along these lines and to pay the limits of the insurance policy. Johnston's letter also contained a warning that a failure on the part of Aetna to settle would result in Cowden's holding the insurance company responsible for any amount over $7,500 that Cowden might be required to pay.

No response to this letter was forthcoming. In fact, no further communication was had between Johnston and Schmidt except for a second letter by Johnston to Schmidt to be mentioned presently. Schmidt testified that, after his receipt of the first letter, he considered Johnston as an adversary. Schmidt did telephone DeCarlo, Aetna's claims manager, and read him Johnston's letter. DeCarlo thereupon arranged for a meeting in his office in Pittsburgh during a recess in the trial over the Thanksgiving weekend. Present at the

meeting were DeCarlo, John M. Reed, Matiak, Aetna's claims representative, and Schmidt. The contents of the letter and the progress of the trial were discussed. In the belief that there was a good chance of winning the case for Cowden for the reason that whatever negligence, if any, might be attributable to Cowden's driver it was not the proximate cause of the accident, it was therefore decided at the conference that the trial should be proceeded with, and it was accordingly resumed. The day before the trial was finally concluded Johnston, who had received from Phillips a firm offer to settle for $45,000, wrote another letter to Schmidt in which he reiterated his position in the first letter and stated further Cowden's willingness to contribute $10,000 to effect a settlement. This letter was handed to Schmidt by Johnston at the noon recess of the trial on that day. Schmidt again telephoned DeCarlo, read the letter to him and stated that the testimony was substantially the same as in the previous trial and that he could see no reason to change his position, namely, that they had a good chance to win the case because Cowden was not legally responsible for Phillips's injuries.

Settlement was not effected, and the succeeding day the jury returned a verdict in favor of the plaintiff for $90,000. Motions for a new trial and for judgment n.o.v. were refused. Phillips agreed to take $80,000 for a quick payment of the verdict, and no appeal was taken from the judgment entered. Cowden seeks in the present action to recover from the insurance company $35,000, with interest, being the amount that he was required to pay over and above the $10,000 he was willing to contribute to a settlement.

John M. Reed testified that it was always his opinion that the case was not one for settlement for the reason that Cowden was not liable to Phillips in damages for his injuries and that, in view of Judge CUM-

MINGS'S expressed opinion upon setting aside the $100,-000 verdict and granting a new trial, if a verdict should again be returned for the plaintiff against Cowden, the court would relieve him from it. Reed at no time entertained any thought, nor did any of the defendant's other representatives active in the matter, that, if Phillips obtained a verdict against Cowden, it would be for less than the full amount of his insurance coverage, viz., $25,000. Their concern was not to reduce the amount of the insured's liability but to avoid it entirely on the ground that he was not legally liable for the plaintiff's injuries.

The basic question of law raised by this appeal relates to the nature and extent of the duty owed to an insured by his insurer against liability for personal injury to others where the insured, by the terms of the policy, cedes to the insurer the right to control litigation (falling within the insurance coverage) including possible settlement of the claim against the insured when it is apparent that a recovery, if adversarily obtained, will exceed the maximum limit of the insurer's liability under the policy.

This precise question has never before been passed upon by this court, but, fortunately, there is no occasion for any controversy as to the applicable rule. It is established by the greatly preponderant weight of authorty in this country that an insurer against public liability for personal injury may be liable for the entire amount of a judgment secured by a third party against the insured, regardless of any limitation in the policy, if the insurer's handling of the claim, including a failure to accept a proffered settlement, was done in such a manner as to evidence bad faith on the part of the insurer in the discharge of its contractual duty. A considerable volume of case law has developed on this point in the past several decades. Counsel for the ap-

pellant notes in his brief some one hundred and fifteen cases dealing with the question. At least twenty-six outside jurisdictions have passed upon the issue, and, while there is a considerable divergence of opinion on the rationale of the recovery, almost all the authorities are agreed that an insured may recover from his insurer, regardless of policy limitations, on the ground of negligence, bad faith or fraud in the insurer's conduct in respect of its responsibility. An extensive review of these authorities may be found in the Annotation at 40 A.L.R. 2d 168; see, also, 8 Appleman, Insurance Law and Practice, §§4711-4713 (1942 Ed.); 5A Am. Jur., Automobile Insurance, §§112-114; and Keeton, Liability Insurance and Responsibility for Settlement, 67 Harv. L. Rev. 1136 (1954).

The reason for the rule is at once apparent when the respective rights and liabilities under an indemnity contract are considered in the light of the peculiar relationship existing between the parties where control over litigation covered by the policy is vested in one of the parties. In *Perkoski v. Wilson,* 371 Pa. 553, 556, 92 A. 2d 189, under an immaterially different factual situation, we said,—"When the company voluntarily undertook the defense of [the insured] in pursuance of its privilege under the policy, it assumed a position of trust and confidence which called for the exercise of the utmost good faith, particularly in view of the possible conflict of interest between the insurer and the insured such as later developed." And, in *Wiener v. Targan,* 100 Pa. Superior Ct. 278, 284, it was recognized that the contractual relationship under an indemnity policy was one requiring "a high degree of good faith in the conduct of the indemnity company's counsel generally . . . ." See, also, *Malley v. American Indemnity Co.,* 297 Pa. 216, 224-225, 146 A. 571. While the contract is primarily one of indemnity, it operates at the

same time to create an agency relationship in its provision for the insurer's exercise of control over the disposition of claims against the insured (within the policy's limits) whether that be by settlement or litigation. Thus, both parties have definite and separate interests in the disposition of such claims. And, where there is little or, as in the instant case, no likelihood of a verdict or even a settlement within the limits of the policy's coverage, the separate interests of the parties are in effect substantially hostile. In such circumstances, it becomes all the more apparent that the insurer must act with the utmost good faith toward the insured in disposing of claims against the latter.

However, it has been held in this State as well as in other jurisdictions that there is no absolute duty on the insurer to settle a claim when a possible judgment against the insured may exceed the amount of the insurance coverage: *Schmidt v. Travelers Insurance Co.,* 244 Pa. 286, 289, 90 A. 2d 653. The requirement is that the insurer consider in good faith the interest of the insured as a factor in coming to a decision as to whether to settle or litigate a claim against the insured. What weight the insurer is duty-bound to accord to the interest of the insured is of course not determinable by any fixed legal standard or norm. Some courts have held that where the interests of the parties are conflicting, the insurer need not consider those of the insured. On the other hand, it has been held in at least one jurisdiction that in such a situation the interest of the insurer must yield. The predominant majority rule is that the insurer must accord the interest of its insured the same faithful consideration it gives its own interest: see *Keeton,* supra, footnotes 18 to 23, and cases cited therein. Since it is obvious that the interest of one or the other party may be imperiled at the instant of decision, the fairest method of balancing the interests is

for the insurer to treat the claim as if it were alone liable for the entire amount. But, that does not mean that the insurer is bound to submerge its own interest in order that the insured's interest may be made paramount. It means that when there is little possibility of a verdict or settlement within the limits of the policy, the decision to expose the insured to personal pecuniary loss must be based on a bona fide belief by the insurer, predicated upon all of the circumstances of the case, that it has a good possibility of winning the suit. While it is the insurer's right under the policy to make the decision as to whether a claim against the insured should be litigated or settled, it is not a right of the insurer to hazard the insured's financial well-being. Good faith requires that the chance of a finding of nonliability be real and substantial and that the decision to litigate be made honestly.

The question, then, for consideration is whether the evidence in the case was sufficient to justify the jury's finding that, in deciding to proceed with the trial to verdict, the defendant's representatives were guilty of bad faith in arriving at their decision. The learned court below concluded that they were not and accordingly entered judgment for the defendant n.o.v. With that action, we fully agree.

The court buttressed the judgment with an exhaustive and cogent opinion (see 9 D. & C. 2d 1) which renders unnecessary our examining in extended detail the various bits of evidence advanced by the appellant as proof that the defendant was guilty of bad faith in proceeding with the trial of the case to a conclusion by the jury's verdict instead of accepting the proposed settlement. There is no merit in any of the appellant's contentions based upon the matters which he deems evidential. Especially does this become manifest when it is borne in mind that *bad faith, and bad faith alone,*

was the requisite to render the defendant liable. Nor is it without presently material significance that the plaintiff does not assert that the defendant's conduct was fraudulent or even negligent; and, of course, bad judgment, if alleged, would not have been actionable.

The appellant, however, appears to be wholly unmindful of the law's requirement that bad faith must be proven by clear and convincing evidence and not merely insinuated. As the late Judge COLUMBUS, who was the trial judge in the instant case, sagely observed in the opinion for the court en banc,—"The backwash of the Phillips-Cowden litigation, and the adversity encountered by Cowden, has the unfortunate tendency to obscure, magnify and distort out of proper proportion the behavior and actions of the defendant and its agents in defending the Phillips claim. The jury's verdict confirmed the fears of Cowden and his private counsel, and verified the basis of their concern as expressed in the letters sent Schmidt. However, it does not of itself lend substance to the charge of bad faith, proof of which is essential to the plaintiff's recovery. It is merely proof that the results of Saturday's contest are more certainly stated on the following Monday than they are predictable on the preceding Friday. [Paragraph] To obtain the proper perspective that will enable us to appraise the attitude of the insurer in handling the Phillips claim, we must focus our attention on the facts and circumstances in appearance at the time the requests for settlement were made."

A number of instances are cited by the appellant, the cumulative effect whereof proves, as he contends, that the defendant was guilty of bad faith in its handling of the Phillips claim. Neither separately nor together do the matters which the appellant thus cites constitute any proof of bad faith on the part of the defendant. For example, the statement by DeCarlo,

Aetna's claims manager, to George Bloom, Phillips's attorney, that the home office had decided that the Phillips case was one for trial was certainly not evidence of bad faith in any view. Just when the statement had allegedly been made was not shown; but, even if it was made in connection with the talk of settlement, no one said it was untrue. Likewise, the statement which Cowden attributed to Schmidt, as having been made during the course of the trial, that he was employed to try the case and not to settle it lacked probative value on a question of the insurer's good faith. Incidentally, Schmidt flatly denied ever having said what Cowden thus ascribed to him. But, accepting for present purposes that it was said just as Cowden related, still it was not inconsonant with a bona fide decision that the defendant, by trial, had a good chance of relieving Cowden, as well as itself, from all liability. Was the defendant required to pay out twenty-five thousand dollars of its own money in order to compensate for Cowden's failure to carry adequate insurance?

The appellant argues that the failure of the defendant's representatives to make formal response to the two letters which Johnston, Cowden's private counsel, handed to Schmidt, Cowden's trial attorney, in the midst of the hotly contested trial evidenced bad faith on the part of the defendant. Considering the circumstances in which the letters were delivered, it is more than difficult to see what answer other than the one that was impliedly given was either required or expected. When Johnston, who had theretofore been cooperating with Schmidt in the preparation of the case for trial and had been sitting by as an associate during the progress of the trial, suddenly, without a word of warning or remonstrance otherwise indicated, served trial counsel with a prepared written document demanding settlement on pain of holding the insurer li-

able in damages above the policy's limits, what sort of a reply to such a letter could be expected? Schmidt aptly characterized the situation when he testified at the trial of the instant case as follows,—". . . when I got the first letter from Mr. Johnston I was considerably upset about the matter, because up to that point Mr. Johnston and I had worked together on this thing. I had discussed the matter with him through the first two or three days of trial and he was constantly present. From the time that I got the first letter I felt that Mr. Johnston had become a complete adversary of mine and that the letter was drawn in such a way as to be the foundation for this present case." The defendant's failure to respond formally to the Johnston letters does not afford even a scintilla of evidence of bad faith. In fact, the first Johnston letter evoked a meeting and conference of the defendant's representatives which further confirmed their good faith in treating with the problem.

As already related, Schmidt, upon his receipt of the first Johnston letter, called DeCarlo, Aetna's claims manager in Pittsburgh, and read it to him. DeCarlo called a meeting in his office in Pittsburgh during the weekend recess in the trial. Present at the meeting were John Reed, Schmidt, DeCarlo and Matiak, Aetna's claim representative. They recanvassed the situation, again considering whether there was good ground for proceeding with the trial to verdict. They concluded that there was; that nothing had happened to change the status of the litigation. In so concluding, they did not act arbitrarily but gave to Johnston's self-serving and threatening letter such consideration as it deserved. The appellant now contends that Johnston's not having been invited to attend the meeting in DeCarlo's office during the trial recess is evidence of bad faith on the part of the defendant's representatives. Why should

they have called in Johnston when he had shown himself to be an adversary? His only participation could have been to press his demand that the defendant company voluntarily contribute the full amount of the policy's coverage in keeping with his ultimatum.

When Schmidt received Johnston's second letter (the day before the trial was concluded), he again called DeCarlo in Pittsburgh and read it to him. DeCarlo asked whether there had been any change in the case since their conference in his office. Schmidt replied that there had not; that the evidence adduced was substantially the same as it had been at the preceding trial. The appellant now complains that Schmidt's answer failed to tell the whole story—that the plaintiff had offered additionally the testimony of an "expert" who had given it as his opinion that the fire under Cowden's truck had been caused by a defective brake. But, that had no legal bearing whatsoever on the important question whether any negligence attributable to Cowden could possibly be held to have been the proximate cause of the plaintiff's injuries. That was the legal proposition upon which the defendant's representatives, not unadvisedly, thought they could have Cowden relieved from all liability.

The appellant asserts that the company's representatives, particularly its legal advisers, were not sufficiently impressed with the possibility of a large verdict—much in excess of the coverage of the insurance policy—which the previous verdict of $100,000 portended. It was, of course, always recognized by everyone in the case that any recovery that would be had would greatly exceed the maximum limit of the insurance. But, as already shown, the fact that any verdict returned would be for a very large sum did not preclude an honest and bona fide belief that Cowden would be held not to be liable. The question of Cowden's lia-

bility was not concluded adversely to him by our decision in *Phillips v. Cowden,* supra, where we affirmed the granting of the defendant's motion for a new trial. Speaking for the court, our late Brother STEARNE said that, if we affirmed the granting of a new trial, "we have no occasion to consider his motion for judgment n.o.v." And, we affirmed.

In conclusion we cannot do better than quote from Judge COLUMBUS'S opinion for the court below as follows: "A careful review of all the circumstances in this case leads inevitably to the conclusion that the defendant's decision not to compromise was the result of the honest, considered judgment of its trial lawyer, claims manager and associate counsel. Their judgment coincided with the opinion of the trial court written after the second trial, in which the evidence was substantially the same as that presented in the third trial. It was a judgment well founded, and one clearly justified by the facts, notwithstanding the adversity subsequently encountered by Cowden as a result of this decision. Plaintiff has produced nothing to show that the decision not to accept the settlement proposal was in anywise inconsistent with the insurer's duty to its insured. In the absence of any proof to the contrary, there is a presumption that men have acted fairly, honestly, properly, in good faith and without fraud: 20 Am. Jur., Evidence, Sec. 229; 31 C.J.S. Evidence, Sec. 126."

Judgment affirmed.

Mr. Justice COHEN dissents.