## Rider v. The Fidelity and Casualty Company of New York

628

*Jacob E. Horewitz* and *Edward D. Brown*, for plaintiff.

*Frank R. Crow, Jr.*, for defendant.

BANE, P. J., June 14, 1961.—This is an action of trespass, tried without a jury, in which plaintiff, Virginia Ann Rider, seeks to recover the sum of $5,500, together with interest, costs and attorney fees, from defendant, The Fidelity and Casualty Company of

New York, a corporation, upon a claim that defendant breached its duties and acted in bad faith in refusing to settle plaintiff's liability under a policy of insurance issued to plaintiff's father by defendant, under the terms of which plaintiff was fully covered.

The policy contained the usual terms providing for limitation of the coverage to $10,000 for injury to any one person, as well as the right to defend any suit instituted against the insured. The sum claimed represents the excess over the limit of coverage which will be necessary to satisfy a judgment recovered in a trespass action for injuries inflicted upon a minor child by plaintiff while she was driving her father's automobile.

The sole issue here raised is whether or not the insurance carrier, under all the evidence, breached its obligation of good faith to the insured.

From the record we make the following

### Findings of Fact

1. On January 11, 1952, at or about 4:25 p.m., plaintiff in this proceeding, Virginia Ann Rider, then 17 years of age, was operating her father's automobile, as the sole occupant thereof, in a northerly direction along South Gallatin Avenue, in the City of Uniontown, Fayette County, Pennsylvania. At a point on South Gallatin Avenue approximately 100 feet north of its intersection with East Fayette Street, the vehicle struck one James Robert Davis, a minor child then five years of age.

2. The said minor child, James Robert Davis, sustained serious, grievous and permanent injuries in the accident, for which his mother, Margaret Davis, in her own behalf and on behalf of the minor child, instituted a civil action of trespass against plaintiff herein in the Court of Common Pleas of Fayette County, Pennsylvania, at no. 388, June term, 1953.

3. Pursuant to the terms of the insurance policy, defendant herein undertook the defense of such action, and, in April of 1955, the first complete trial was held, resulting in verdicts in favor of James Robert Davis, a minor, in the sum of $20,000, and in favor of Margaret Davis in her own right in the sum of $12,000.

4. Immediately following this trial, the insurance carrier, acting in the name of and on behalf of plaintiff herein and of itself, filed motions for judgment n. o. v. and for a new trial. On September 23, 1955, the Court of Common Pleas of Fayette County, in an opinion written by Judge Braemer, overruled said motion for judgment n. o. v., but did grant the motion for a new trial. An appeal was then filed by the Davises to the Supreme Court of Pennsylvania, and on November 27, 1956, in an opinion written by Mr. Justice Arnold (Mr. Justice Musmanno dissenting) the court held that, since there was a direct conflict between the proof of defendant's negligence in the evidence submitted by plaintiff and defendant, and also such conflict in the testimony of plaintiffs' own witnesses as to be "confusing and in some respects incredible," the court below did not palpably abuse its discretion in granting a new trial: Davis v. Rider, 387 Pa. 14 (1956).

5. The action then came on for retrial in the Court of Common Pleas of Fayette County on April 15, 1957, before Judge Morrow, and again verdicts were returned in favor of the minor, James Robert Davis, in the sum of $10,000, and in favor of the mother, Margaret Davis, in the sum of $16,500.

6. Defendant therein again filed motions for a new trial and for judgment n. o. v., and by order dated October 7, 1957, Judge Morrow refused the motion for judgment n. o. v. and the verdict in favor of the mother, Margaret Davis, was remitted to $5,500 by

remittitur filed October 17, 1957. On January 17, 1958, defendant herein delivered to the Davises its check in the sum of $10,000, the full coverage under the policy, leaving unpaid the sum of $5,500, the amount sued for in this action. No appeal was filed from the decree of this court dated October 7, 1957.

7. The evidence submitted for the consideration of the court and jury in the trial in which Judge Morrow presided was substantially the same as that produced in the prior trial, save only the witness John Show, whose testimony prompted the conclusion of "incredibility," was not called.

8. The age of the minor, James Robert Davis, precluded the defense of contributory negligence.

9. The negligence of defendant, Virginia Ann Rider, was in dispute.

10. The injuries received by the child were so serious that, if a verdict were to be returned for plaintiff mother and minor child, there was more than reasonable grounds to believe that such verdict would substantially exceed the limit of the amount of the insurance coverage.

11. The insurance carrier defendant offered $2,500 in settlement of the claims of the minor and the mother plaintiffs, which amount was not sufficient to pay the outstanding hospital, medical and nursing bills.

12. Plaintiff mother and minor child, through their counsel, Samuel J. Feigus, of the Fayette County Bar, after ascertaining the insurance coverage to be in the amount of $10,000, and following extensive negotiations with counsel for the insurance carrier and its adjusters, made a firm offer prior to the first trial to settle the case for $6,500. This offer was refused and the above counter-offer of $2,500 was made. After the verdict of $32,000 in the first trial, Mr. Feigus then suggested the settlement should not be less than $10,-

000, or at least in that vicinity. This offer was flatly refused, and the $2,500 again suggested.

13. During the second trial, before Judge Morrow, the record discloses a more than passing interest on his part in the outcome of the trial, for he exercised his judgment and experience as a jurist of many years' experience in suggesting to the parties that the case should be settled. He first persuaded Mr. Feigus to return to his original offer of $6,500 to settle the case, and having done so, was told, after further negotiation with the insurance carrier, that it refused the offer. The offer was again renewed by plaintiffs' counsel immediately prior to and after the refusal to grant defendant's motion for a compulsory nonsuit, which offers of settlement were again rejected, even though the record discloses and it is admitted by the then counsel for defendant, Henry R. Beeson, of this bar, that Judge Morrow warned him he was placing the insured (Rider) in a dangerous position with respect to personal liability .

## Discussion

In the instant case, we are squarely confronted with the fact that there was substantial conflict in the evidence as to the manner in which the accident occurred. To illustrate this circumstance, we briefly set forth the testimony of the witnesses called in the original trespass actions.

On or about January 11, 1952, at or about 4:25 p.m., on South Gallatin Avenue, Uniontown, an accident occurred. The testimony on behalf of plaintiffs, Margaret Davis and her minor son, James Robert Davis, discloses that the minor was, with his half-sister, Geraldine Saxton, aged nine, on the sidewalk in front of Libby's Restaurant on South Gallatin Avenue, where they were playing with a dog owned by the proprietor of the restaurant. Geraldine testified the dog broke loose and she started to chase him across the

street. She said that when she got almost across the street she looked to her left and saw the car which proved to be the one driven by defendant, Virginia Ann Rider, coming north very fast on the east side of Gallatin Avenue, and that her brother was standing on the curb by the sewer, bending over with a dog collar in his hand. She testified that at that time she saw defendant's car swerve to avoid her and strike her brother.

The mother, Margaret Davis, testified that she was in her home when she heard screeching brakes, ran out to see what had happened and saw her boy lying in the street about two feet from the curb. All the witnesses for plaintiffs testified there were no cars parked at or in front of Libby's Restaurant.

Defendant, Virginia Ann Rider, testified that she was driving at a speed of from 15 to 20 miles per hour, that she did not see Geraldine or the boy, but did see a red cap fly over her right fender, and she immediately stopped. She stated she heard no noise, thump or rumble which would indicate she had struck any object. She admitted that the right front headlight of the car was damaged in the accident. The injured child and his mother were placed in the rear seat of her car, and she drove them both to the Uniontown Hospital. She testified that at least two cars were parked along the curb at or near the spot where the child was struck, and that the mother picked the child up from the street between one of the cars parked along the curb and her automobile, which was stopped on Gallatin Avenue in its proper lane of traffic.

Miss Helen Hinsey, a teacher in the city schools of Uniontown, whose residence is just three houses north of Libby's Restaurant on the same side of South Gallatin Avenue, testified that she parked her car at the first parking meter just north of Libby's Restaurant at about 4:15 p.m., went into her home, and a short

time later she, too, heard screeching brakes and came out to see what had happened. She stated she saw Mrs. Davis with her son in her arms getting into the Rider car. She did not know where Mrs. Davis had picked up the child.

George H. Minor, a policeman on the city police force, testified he made an investigation of the case, arrived at the scene after Miss Rider had taken the boy to the hospital. He then left and returned about 6:30 p.m., when he talked to the child Geraldine, who, he says, told him that the dog started across the street and her brother started after the dog and was struck.

Frank A. King, operator of a bus, says he left the bus depot about 1,000 feet from the scene of the accident around 4:17 p.m., and while proceeding south on South Gallatin Avenue he observed a commotion in front of Libby's Restaurant; that he stopped the bus and saw a lady pick up a child that was lying between the car driven by Miss Rider and the car parked next to the curb, and get into the Rider car, which drove away.

The rules by which we must resolve the issue here presented have, for the most part, been clearly set forth for our guidance in the recent decision of our Supreme Court in Cowden v. Aetna Casualty & Surety Co., 389 Pa. 459.

When the insurer accepted the premium charged for the policy, it impliedly undertook to use its control and management for the mutual benefit of the parties to the contract. The relation between the insurer and the insured became mutually fiduciary, and each owed the other the duty of the utmost good faith in their dealings together and in exercising the privileges and discharging the duties specified in and incident to the policy contract. The insurer certainly had a right to look after and consider its own interests, but

it was also bound to have due regard for the insured's interests as well. If, under all the facts in the instant case, in what it did and refused to do, it acted honestly and according to its best judgment, this suit must fail. If, on the contrary, it used its authority over the case to save itself from as much of the loss as possible, in disregard of plaintiff's rights, consciously risking loss to plaintiff to save loss to itself, the suit must succeed.

From the voluminous record in this case, it is quite clear that after the initial investigations were completed a real and substantial difference existed in the minds of the parties as to the manner in which the accident occurred. While it has been ably argued that the $2,500 offered to settle, on the part of the insurer, was much more than a nuisance value offer, from which it is suggested that we may infer that the insurer recognized the dangers inherent in the case to itself and its insured, we need only point out that the converse is equally true. Plaintiffs must also have realized the possibility of an adverse verdict when they agreed, in light of the serious injuries to the child, to settle their claims for a mere $6,500. Therefore, up to this point in the proceedings, we must conclude that the original determination to proceed to trial was warranted and justified. There is nothing in the record which indicates to us that at that time the insurer's belief in the ultimate success of its case was not related to reality.

The first trial was had, and a large verdict was returned against defendant, Virginia Rider, which, while not controlling, constituted at least a danger signal to the insurer.

We come now to the second trial, where, after the offers and counter-offers were made and refused, the determination to litigate was again made. Counsel for the insurer in the instant case apparently assumes

that, once the decision has been made to proceed to trial, that ends the insurer's responsibility for such determination, if such decision were bona fide and honestly made. We cannot agree with nor accept this conclusion. The opportunity to settle a case is never concluded until it has been finally submitted to the jury for its decision. Throughout a trial, as the testimony is produced, as witnesses relate their knowledge of the facts, it is the continuing responsibility of counsel to judge and weigh their client's cause. Every active trial lawyer is fully aware of the fact and circumstance that witnesses do not always measure up to what is expected of them, that they do become confused, and that a good case sometimes goes "down the drain" by reason of an inadvertent statement of a witness. Thus, it is self-evident that the refusal to settle and the decision to continue with the trial is an ever-present responsibility. Failure to accept this responsibility and to acknowledge its presence as a continuing obligation constitutes a breach of duty owed the insured by the insurer.

After the trial judge refused defendant's motion for a compulsory nonsuit in the second trial, the moment of decision was before the insurer. At this point in the second trial, it could ascertain with certainty that substantially the same testimony had been presented to the jury that had been presented in the first trial. While this factor alone would not be entirely controlling, it nevertheless afforded the insurer an opportunity to weigh and evaluate the possibilities of its case. On this same evidence, a large verdict, substantially in excess of the policy coverage, had been once returned against the insured. Nothing new was presented in the second trial which might indicate a more persuasive advantage to the insurer. In a case where the victim was the five year old son of a widow, too young to be guilty of contributory negligence, who

suffered severe and permanent injuries at the hands of a 17 year old high school girl, it should have been patently clear that the sympathies of the case could only be with the child. Lest the insurer, its counsel and adjusters might not fully appreciate their then position, the trial judge warned them they were placing the insured in a dangerous position with respect to personal liability. While the insurer and its representatives were not compelled to accept the advice of the trial judge, it was less than prudent to ignore such warning. It is, we believe, sufficient for us to say that the danger signals were rampant, and that only the most optimistic could entertain the wistful hope of avoiding a verdict far in excess of the policy coverage. After a careful review of the evidence before us, we can only conclude that the resultant verdict was clearly discernible to all but the most imprudent and those unwilling to see and accept the facts.

Under the standards established in Cowden v. Aetna Casualty & Surety Co., 389 Pa. 459, the decision to expose the insured to personal pecuniary loss must be based upon a bona fide belief by the insurer, predicated upon all the circumstances of the case, that it has a good possibility of winning the lawsuit and that the chance of a finding of non-liability is real and substantial. It is to be noted in the language used by our Supreme Court that the mere possibility, a possibility, or a legal possibility of winning the lawsuit is not enough; it must be a *good* possibility. Similarly, the decision to litigate must be honestly made in the light of a *real* and *substantial* chance that there will be a finding of non-liability.

It is to be admitted, of course, that the insurer had a possibility of winning this case, as such possibility exists in the trial of any case submitted to a jury. But under the rules provided for our guidance in the Cowden case, such possibility is not enough. When the mo-

ment of decision presents itself to risk the insured's financial wellbeing, the decision must be honestly made, based upon a bona fide belief that, in light of all the facts and circumstances then and there existing, there is a *good* possibility of winning the lawsuit. Such was not the case here, for it is evident that while the legal possibility of winning existed, it fell far short of the standard required. The Cowden case requires that the chance of a finding of nonliability *must* be *real* and *substantial.* As we view the record before us, we have found nothing which would have warranted the insurer, in the exercise of its obligation of good faith to the insured, to conclude that it had more than a chance of a finding of nonliability. Again, this possibility falls short of the standard required.

The composite of all the evidence before us leads us to the inevitable conclusion that defendant insurer in the instant case intentionally disregarded its insured's financial interest, in the hope that the jury would find a verdict in the insured's favor, and thus the insurer would escape the full responsibility imposed upon it by the terms of the policy.

As respects the claim asserted in this action for counsel fees as part of the damages, we find no authorities or justification for the same. The claim in this respect is disallowed.

### Conclusions of Law

1. Defendant, The Fidelity and Casualty Company of New York, was guilty of bad faith in handling the case of Davis v. Rider, including its failure to accept a proffered settlement, thereby subjecting Virginia Ann Rider to serious financial loss.

2. Plaintiff herein, Virginia Ann Rider, is entitled to judgment against defendant, The Fidelity and Casualty Company of New York, in the amount of $5,500, with interest thereon from April 17, 1957.

3. Plaintiff is not entitled to counsel fees as a part of her claim against defendant.

4. Defendant should pay the costs.

*Order*

And now, June 14, 1961, we find for plaintiff, Virginia Ann Rider, and against defendant, The Fidelity and Casualty Company of New York, in the sum of $5,500, with interest thereon from April 17, 1957, and costs.

The prothonotary is directed to give notice of this decision forthwith to the parties or their attorneys of record, and to enter judgment thereon in favor of plaintiff and against defendant, unless exceptions thereto are filed in his office within 30 days after service of such notice.