William G. CLARK and C. W.
Bierkamp & Sons, Inc.

v.

INTERSTATE NATIONAL
CORPORATION.

Civ. A. No. 78–1273.

United States District Court,
E. D. Pennsylvania.

March 6, 1980.

David L. Pennington, Philadelphia, Pa.,
for plaintiffs.

Christopher C. Fallon, Jr., Philadelphia,
Pa., for defendant.

## MEMORANDUM

BECHTLE, District Judge.

Presently before the Court are the motions of defendant Interstate National Corporation ("Interstate") for a new trial and/or for judgment notwithstanding the verdict. For the reasons stated below, the motions will be denied.

This is a diversity action brought against a liability insurance company by its insured and the insured's assignee, who was previously a successful claimant against the insured in related personal injury litigation. On March 20, 1970, plaintiff William G. Clark ("Clark") was injured when his automobile was "rear-ended" by a truck owned by C. W. Bierkamp & Sons, Inc. ("Bierkamp"). At the time, Bierkamp was insured under a $25,000 "primary" policy issued by State Automobile Insurance Association. In addition, Bierkamp was the insured under a $75,000 "excess" policy issued by Interstate.

Clark sued Bierkamp for damages in the Philadelphia Court of Common Pleas where Interstate voluntarily undertook the defense of the case. On March 4, 1976, the jury returned a verdict in favor of Clark in the amount of $212,000, which was $112,000 in excess of the combined primary and excess policy coverage. On July 1, 1977, Bierkamp assigned to Clark all of its rights against Interstate and on April 14, 1978,

Bierkamp and Clark instituted this action as co-plaintiffs. The theory of this action was that Interstate refused, in bad faith, to settle the underlying action against Bierkamp for the policy limits when, in fact, Clark had offered, numerous times, to settle for that figure. Interstate acknowledged that, under the applicable law, it could be liable for the entire verdict if it had refused in bad faith to settle for the policy limits, *Cowden v. Aetna Casualty and Surety Co.*, 389 Pa. 459, 134 A.2d 223 (1957), but argued that it did not accept the offers to settle because it needed additional information as to Clark's preexisting medical conditions or treatments. Thus, Interstate argued, it was not guilty of bad faith.

This case was submitted to a jury on November 20, 1979, and a verdict was returned in favor of Clark and Bierkamp. After the jury found for the plaintiffs, the parties having agreed that liability, if found, was in the amount of the previous verdict in excess of the policy limits, judgment was entered in the amount of $112,000. The instant post-trial motions were timely filed thereafter.

■ Various grounds for error are alleged concerning the admissibility or sufficiency of evidence. As the Court understands the applicable substantive law, it finds that there was sufficient evidence presented to support the verdict. Plaintiffs produced two expert witnesses, R. H. Griffith, Esquire, and Emil Toften, Esquire, who testified that, in their opinions, Interstate was guilty of bad faith in the manner in which it processed Clark's claim. *See* N.T. 2–171, 172; 3–100, 103, 104, 105. In addition, substantial factual evidence was adduced, tending to show that numerous offers to settle for the policy limits were made over a period from November 11, 1971 [N.T. 2–99], until just before the running of the statute of limitations on March 20, 1972

[N.T. 2–113]. Accordingly, the Court finds that there was sufficient evidence to support the verdict.

■ Similarly, the Court rejects Interstate's contentions concerning the admissibility of evidence. First, Interstate argues that it was prejudicial error to permit the jury to view photographs of Clark's car taken after the accident. The Court disagrees because the photographs were not, in the Court's opinion, unreasonably inflammatory, violent or misleading. Moreover, the photographs were extremely relevant to the issue of what Interstate knew and perceived about the accident during the investigation. As part of the Interstate file, the photographs were properly sent out with the jury.[1]

■ The principal argument put forth by Interstate concerns the Court's charge. The parties agree that the substantive law of Pennsylvania is applicable. However, Interstate argues that it was error for the Court to charge that bad faith can be evidenced by *negligent* as well as intentional behavior. The Court has examined the briefs of counsel, has reexamined the decisional law and concludes that, while the law is not the model of clarity, negligence can support an allegation of bad faith—therefore, the Court's charge was correct.

The relevant portions of the Court's charge are as follows:

Now, under such circumstances the insurance company must consider in good faith the interests of the insured. The weight to be given that interest is not fixed to a rigid standard but the insurance company must accord the interests of its insured the same weight and consideration that the insurance company gives its own interests in the case. So in the context of this case when it appears that a verdict in a court case growing out

---

1. In addition, Interstate argues that the Court erred by permitting counsel for plaintiffs to cross-examine Interstate's expert concerning a reinsurance agreement. However, the reinsurance agreement to which Interstate was a party was plainly relevant to what Interstate's agents perceived and to how they evaluated the

case. In any event, Interstate's counsel only objected on the ground that his expert did not have a prior opportunity to review the agreement. The Court gave that expert, James L. Griffith, Esquire, an opportunity to study the document during trial. *See* N.T. 5–93 to 95.

of a claim will likely exceed the policy limits, the decision to expose the insured to personal loss must be made.

\*   \*   \*   \*   \*   \*

They also owe good faith to their insured in respect to the insured's interests in respect to possible excess as they consider their own. So when it appears in a case that the claim could exceed the limits, then the company must make a decision as to whether or not to expose their insured to the claim that could result in an excess verdict. That decision must be based upon a bona fide belief by the insurance company based on all the circumstances of the case that it has a good chance of being found correct in its assessment of the amount if any to be found against its insured, whether it is within the limits or not.

That's another way of saying the insurance company doesn't have to guess exactly right. They don't have to be mistake-free. They don't have to be error-free. But *they have to use good judgment. They have to have what we call a bona fide belief—that means an honest belief, a fair belief, a reasonable belief— that their assessment is correct.* And if they have that belief and decide not to settle but to go ahead with the trial or a court case, and the ultimate decision shows that they were wrong, that doesn't mean they are liable. They are not liable for being wrong; they are liable for not being fair and honest and proper in the examination of all of the circumstances that caused them to make that decision. And that's what we call good faith.

Now, if in making that decision to proceed it can be said that they have exercised bad faith, then they can be liable in excess of their limits because it's their bad faith that caused the proceeding that resulted in the excess.

\*   \*   \*   \*   \*   \*

*Now, bad faith can be evidenced by either intentional conduct, by purposeful conduct, or it can be evidenced by negligent conduct. An insurance company owes its insured the obligation of good faith which carries with it the obligation to furnish a reasonable and prudent representation in every aspect.*

In considering the events that took place you should consider the time that the company had to consider it, what it did, what its resources were, what its decisions were, what information it had, what information it didn't have. You should consider the extent to which the information that it had was important, whether or not the information it didn't have was important if it didn't have any, and after considering all of that, determine whether or not a reasonable and prudent claims office or claims representative or attorney would have acted as the defendant did.

If you conclude that that's how such a reasonable and prudent person would have acted under those circumstances, be that an attorney or investigator or whatever, then the fact that there was later a verdict that was in excess wouldn't make the company liable because then acting reasonably and prudently is all that the insured is entitled to.

On the other hand, if they failed to exercise due care under the circumstances, and if that failure to exercise was what we call a proximate cause of the failure of the company to make an offer, then it can be said that their behavior was not reasonable and prudent. *That is, it is another way of saying it was negligent. And if that negligence was a proximate cause of the company not making an offer, then it can be said that they acted in bad faith.*

N.T. 6–10 to 13, 6–17 to 18 (emphasis added).

The seminal Pennsylvania case in this area is *Cowden v. Aetna Casualty and Surety Co., supra.* In *Cowden,* as in the case at bar, there were offers to settle for the policy limits by the claimant which were rebuffed by the insurer. After a verdict was rendered in excess of the policy limits, the insured sued the insurer, alleging that the insurer was guilty of "negligent, wilful, reckless and fraudulent disregard of its fi-

duciary obligations." 389 Pa. at 462, 134 A.2d at 224. The Pennsylvania Supreme Court stated:

> This precise question has never before been passed upon by this court, but, fortunately, there is no occasion for any controversy as to the applicable rule. It is established by the greatly preponderant weight of authority in this country that an insurer against public liability for personal injury may be liable for the entire amount of a judgment secured by a third party against the insured, regardless of any limitation in the policy, if the insurer's handling of the claim, including a failure to accept a proffered settlement, was done in such a manner as to evidence bad faith on the part of the insurer in the discharge of its contractual duty. A considerable volume of case law has developed on this point in the past several decades.. Counsel for the appellant notes in his brief some one hundred and fifteen cases dealing with the question. At least twenty-six outside jurisdictions have passed upon the issue, and, while there is a considerable divergence of opinion on the rationale of the recovery, *almost all the authorities are agreed that an insured may recover from his insurer, regardless of policy limitations, on the ground of negligence, bad faith or fraud in the insurer's conduct in respect of its responsibility. . . .*

*Id.*, at 468–469, 134 A.2d at 227 (emphasis added). The Court can only conclude that the *Cowden* court approved negligence as a ground for recovery against the liability insurer.

The Court views the basis for this holding to be as follows: As *Cowden* points out, there are at least two separate and distinct obligations taken on by the insurer. First, the insurer obligates itself to indemnify the insured up to the policy limit. Second, the insurer voluntarily takes upon itself the responsibility of defending the insured and, in fact, controlling the litigation. *Id.*, at 469, 134 A.2d 223. In rejecting a proposed settlement, in light of the latter responsibility, "[g]ood faith requires that the chance of a finding of nonliability [if the insurer elects to go to trial] be *real and substantial* and that the decision to litigate be made *honestly.*" *Id.*, at 471, 134 A.2d, at 228 (emphasis added). The Court concludes, therefore, that there are subjective and objective aspects to the insurer's obligations to its insured.

Interstate quotes the following language from *Cowden* and argues that negligence cannot evidence bad faith:

> . . . Especially does this become manifest when it is borne in mind that *bad faith, and bad faith alone,* was the requisite to render the defendant liable. Nor is it without presently material significance that the plaintiff does not assert that the defendant's conduct was fraudulent or even negligent; and, of course, bad judgment, if alleged, would not have been actionable.

*Id.*, at 471–472, 134 A.2d, at 228. The difficulty with Interstate's reliance on this passage is that in *Cowden* the plaintiff did allege fraud and negligence. *Id.*, at 462, 134 A.2d 223. However, more importantly, in view of the strong, unequivocal language found previously in the *Cowden* decision, this Court is not convinced to reverse its holding on the basis of this arguably ambiguous language.

Moreover, there have been subsequent statements of what the Court views as *Cowden's* principal holding in Pennsylvania Supreme Court decisions. In *Gedeon v. State Farm Mutual Automobile Insurance Co.*, 410 Pa. 55, 188 A.2d 320 (1963), the court outlined the various obligations placed upon the insurer by the liability insurance relationship. Concerning the insurer's obligation to defend, the court stated:

> [B]y asserting in the policy the right to handle all claims against the insured, including the right to make a binding settlement, the insurer assumes a fiduciary position towards the insured and becomes obligated to act in good faith and with due care in representing the interests of the insured. If the insurer is derelict in this duty, as where it negligently investigates the claim or unreasonably refuses

an offer of settlement, it may be liable regardless of the limits of the policy for the entire amount of the judgment secured against the insured.

*Id.*, at 59, 188 A.2d, at 322.   Similarly, the court quoted this very same language three years later in *Gray v. Nationwide Mutual Insurance Co.*, 422 Pa. 500, 504, 223 A.2d 8 (1966).   This Court concludes that negligence is a ground to support a finding of bad faith.   Accordingly, the Court's charge was proper and the motions will be denied.[2] An appropriate Order will be entered.