# Berry v. Anderson

*Stephen M. Feldman*, for plaintiff.
*E. Parry Warner*, for Keystone Insurance Co.

PRATTIS, *J.*, March 19, 1986—Defendant Keystone Insurance Company seeks summary judgment against plaintiff Theodore Berry in his action to garnish defendant for the amount of a verdict against defendant's insured in excess of the policy limits of the insured.

In April, 1980, plaintiff Berry was a passenger in an automobile which was struck by an automobile driven by Anderson, defendant's insured. Plaintiff suffered serious injuries, and during the course of treatment, developed paralysis in his arms and legs, which condition is apparently permanent.

Defendant's insured notified defendant on the day of the accident and defendant began its investigation immediately. When suit was started against defendant's insured, defendant undertook defense of the action. That action resulted in a verdict in an amount some 20 times defendant's policy limits. The successful plaintiff, as assignee of defendant's insured, brought this action of garnishment seeking the excess and charging that defendant acted in bad faith.

It is clear that a trial court may only grant summary judgment where there is no dispute of fact and where the evidence, viewed in the light most favorable to the opponent of the summary judgment motion would not permit a jury to find in favor of the opponent.

Accordingly, this court must determine whether, after a review of the pleadings, depositions and agreed-upon facts, there is any issue which a jury could be permitted to resolve.

Resolving all inferences in favor of plaintiff (opponent of the motion for summary judgment), this court would be required to believe:

That within 30 days of the accident, defendant's assistant manager concluded that defendant's insured went through a red light at an intersection and struck the automobile in which plaintiff was a passenger, resulting in injuries to plaintiff including but not limited to a punctured lung, lacerated liver, kidney damage, fractured clavicle and heart damage. (Plaintiff had in fact suffered a ruptured aorta.)

On June 13, 1980, the attorney retained by defendant to defend its insured, wrote the insured advising him that the potential verdict in the case might be far in excess of the insured's policy limits and, accordingly, directed the insured to obtain per-

sonal counsel to represent his interest in the matter.

On September 5, 1980, personal counsel for the insured wrote to the attorney retained by defendant to defend the insured, urging him to settle plaintiff's claim against the insured within the policy limits.

Defendant did not give the attorney retained. to represent the insured authority to conduct normal discovery until more than a year after the accident, notwithstanding repeated requests from the attorney retained to represent defendant's insured. When that discovery was finally authorized and had been taken in late summer and early fall in 1981, it resulted in the attorney retained by defendant to represent the insured advising defendant that there was practically no chance of a verdict in favor of the insured and that it was a case in which the policy limits should be paid.

Plaintiff testified that up until July 21, 1981, when his deposition was finally taken by the attorney retained by defendant to represent the insured, he, plaintiff, would have accepted the policy limits in settlement of the case.

In February, 1982, defendant authorized the attorney retained to represent its insured, to offer the policy limits, which he did on February 25, 1982. That offer was rejected by plaintiff on March 8, 1982.

The attorney, retained by defendant to represent the insured, developed a full file, including statements of independent witnesses, reports of independent adjustors retained to investigate the case and evaluations of the claim. There is no evidence that he made any of this information available to the insured or to the attorney retained by the insured to represent the insured's personal interest. In fact, when the personal attorney inquired as to the evalu-

ation placed on the case by defendant, he was told that it was none of his business.

Discovery of defendant's files and depositions of responsible officers and supervisory employees of defendant indicate that at *all* times defendant was aware that the chances of its avoiding an adverse verdict against its insured were almost nil. The report is replete with intra-office memos of defendant categorizing plaintiff's claim against its insured as a major, substantial, far in excess policy-limits claim.

## DISCUSSION

Cowden v. Aetna Cas. & Surety Co., 389 Pa. 459, 134 A.2d 223 (1957), is the seminal case in this jurisdiction on the issue of an insurance company's liability to its insured in these circumstances:

"The basic question of law raised by this appeal relates to the nature and extent of the duty owed to an insured by his insurer against liability for personal injury to others where the insured, by the terms of the policy, cedes to the insurer the right to control litigation (falling within the insurance coverage) including possible settlement of the claim against the insured when it is apparent that a recovery, if adversarily obtained, will exceed the maximum limit of the insurer's liability under the policy.

"This precise question has never before been passed upon by this court, but, fortunately, there is no occasion for any controversy as to the applicable rule. *It is established by the greatly preponderate weight of authority in this country that an insurer against public liability for personal injury may be liable for the entire amount of a judgment secured by a third party against the insured, regardless of any limitation in the policy, if the insurer's handling of the claim, including a failure to accept a*

*proffered settlement, was done in such a manner as to evidence bad faith on the part of the insurer in the discharge of its contractual duty.* A considerable volume of case law has developed on this point in the past several decades. Counsel for appellant notes in his brief some 115 cases dealing with the question. At least 26 outside jurisdictions have passed upon the issue, and while there is a considerable divergence of opinion on the rationale of the recovery, almost all the authorities are agreed that an insured may recover from his insurer, regardless of policy limitations, on the ground of negligence, bad faith or fraud in the insurer's conduct in respect of its responsibility. An extensive review of these authorities may be found in the Annotation at 40 A.L.R. 2d 168; see, also, 8 Appleman, Insurance Law and Practice, §§4711-4713 (1942 Ed.); 5A Am. Jur. Automobile Insurance, §§112-114; and Keeton, Liability Insurance and Responsibility for Settlement, 67 Harv. L. Rev. 1136 (1954).

"*The reason for the rule is at once apparent when the respective rights and liabilities under an indemnity contract are considered in the light of the peculiar relationship existing between the parties where control over litigation covered by the policy is vested in one of the parties.* In Perkoski v. Wilson, 371 Pa. 553, 556, 92 A.2d 189, under an immaterially different factual situation, we said — 'When the company voluntarily undertook the defense of [the insured] in pursuance of its privilege under the policy, it assumed a position of trust and confidence which called for the exercise of the utmost good faith, particularly in view of the possible conflict of interest between the insurer and the insured such as later developed.' And, in Wiener v. Targan, 100 Pa. Super. 278, 284, it was recognized that the contractual relationship under an indemnity policy

was one requiring 'a high degree of good faith in the conduct of the indemnity company's counsel generally. . . .' See, also, Malley v. American Indemnity Co., 297 Pa. 216, 224-225, 146 Atl. 571. *While the contract is primarily one of indemnity, it operates at the same time to create an agency relationship in its provision for the insurer's exercise of control over the disposition of claims against the insured (within the policy's limits) whether that be by settlement or litigation. Thus, both parties have definite and separate interests in the disposition of such claims. And, where there is little or, as in the instant case, no likelihood of a verdict or even a settlement within the limits of the policy's coverage, the separate interests of the parties are in effect substantially hostile. In such circumstances, it becomes all the more apparent that the insurer must act with the utmost good faith toward the insured in disposing of claims against the latter.*

". . . Since it is obvious that the interest of one or the other party may be imperiled at the instant of decision, the fairest method of balancing the interests is for the insurer to treat the claim as if it were alone liable for the entire amount. But, that does not mean that the insurer is bound to submerge its own interest in order that the insured's interest may be made paramount. *It means that when there is little possibility of a verdict or settlement within the limits of the policy, the decisions to expose the insured to personal pecuniary loss must be based on a bona fide belief by the insurer, predicated upon all of the circumstances of the case, that it has a good possibility of winning the suit.*" (Emphasis added.)

These general principles were amplified in Gedeon v. State Farm Mutual Auto Insurance Co., 410 Pa. 55, 188 A.2d 320 (1963):

"Under a typical automobile liability insurance policy, such as the one before us, the insurer undertakes three distinct types of obligations, each of which involves different elements of proof to establish breach thereof, and from the breach of which different measures of recovery result.[2] In the first place, the insurer agrees to indemnify against liability for personal or property damage and to indemnify against certain kinds of property damage to the automobile itself. In order to establish breach of this promise to indemnify, the insured must demonstrate that the policy covers the particular risk in question. The amount of recovery for breach of this obligation is usually determined by the terms of the policy.

"Secondly, the insurer agrees to defend the insured against any suits arising under the policy 'even if such suit is groundless, false, or fraudulent.' Since the insurer thus agrees to relieve the insured of one burden of defending even those suits which have basis in fact, our cases have held that the obligation to defend arises whenever the complaint filed by the injured party may *potentially* come within the coverage of the policy. See Cadwallader v. New Amsterdam Cas. Co., 396 Pa. 582, 152 A.2d 484 (1959).[3] Consequently, there may be an obligation to defend although no obligation to indemnify. See Zeitz v. Zurich General Accident & Liability Ins.

Company, Ltd., 165 Pa. Super. 295, 67 A.2d 742 (1949); Lee v. Aetna Casualty & Surety Co., 178 F.2d 750 (2d Cir. 1949). A refusal without good cause to defend breaches this obligation and gives time to a cause of action regardless of the good faith of the insurer.[4] See King v. Automobile Underwriters, Inc., 409 Pa. 608, 187 A.2d 584 (1963). Based on the usual contract rule for determining damages,[5] the recovery for breach of the covenant to defend will ordinarily be the cost of hiring substitute counsel and other costs of the defense. This recovery may be in addition to any other obtained against the insurer.

"Thirdly, by asserting in the policy the right to handle all claims against the insured, including the right to make a binding settlement, the insurer assumes a fiduciary position towards the insured and becomes obligated to act in good faith and with due care in representing the interests of the insured. If the insurer is derelict in this duty, as where it negligently investigates the claim or unreasonably refuses an offer of settlement, it may be liable regardless of the limits of the policy for the entire amount of the judgment secured against the insured."

While it is important to recognize that while Cowden, supra, imposes excess liability upon the insurance company where the company's handling of the claim was done in a manner as to evidence bad faith, the court gave "failure to accept a proffered settlement" *as an example* of such bad faith but did not indicate that that was the only circumstance where bad faith could be inferred. This is. particularly significant since the court went on to point out that the insurance contract created an agency relationship in its provision for the insurer's control over the litigation. Thus, a conflict of interest between agent and principal where there was no likelihood of a verdict or even a settlement within the policy limits was almost inevitable. See Gray v. Mutual Ins. Co., 422 Pa. 500, 504, 223 A.2d 8, 10 (1966).

In this context, it is helpful to study section 390 of the Restatement of Agency:

"§390. Acting as Adverse Party with Principal's Consent

"An agent who, to the knowledge of the principal, acts on his own account in a transaction in which he is employed has a duty to deal fairly with the principal and to disclose to him all facts which the agent knows or should know would reasonably affect the principal's judgment, unless the principal has manifested that he know such facts or that he does not care to know them."

Comment c of section 390 is also helpful in this context:

"c. Fairness. The agent must not take advantage of his position to persuade the principal into making a hard or improvident bargain. If the agent is one upon whom the principal naturally would rely for advice, the fact that the agent discloses that he is acting as an adverse party does not relieve him from

the duty of giving the principal impartial advice based upon a carefully formed judgment as to the principal's interest. If he cannot or does not wish to do so, he has a duty to see that the principal secures the advice of a competent and disinterested third person. . . .".

Thus, it is clear that Pennsylvania law imposes excess liability on an insurance carrier when its conduct is a breach of duty owed to its insured either by an unreasonable failure to accept a proffered settlement within the policy limits, by a negligent investigation, or by a failure to conduct itself in the fair manner required of an agent whose interests are inherently adverse to its principal.

In the present case, it is clear that defendant knew within days of the underlying accident that its insured was exposed to immense financial risk far beyond the limits of the policy of insurance with defendant. While defendant notified its insured of this risk, a jury might conclude that its conduct thereafter (not communicating the results of its investigation to the personal attorney for its insured, not promptly deposing the parties and witnesses to the accident, not initiating settlement discussions within a period when [from the evidence this court is required to accept] the injured party would have accepted a settlement within the policy limits) was a violation of that duty of *fairness* owed as an agent of its principal. Moreover, while defendant's fiduciary duty did not require it to act against its own interest, it did require defendant to act affirmatively in the interest of its insured.

While most of the cases in the appellate courts have involved the failure of an insurance company to act upon an offer to settle within the policy limits, the Supreme Court of Pennsylvania has not limited recovery to that factual circumstance. In fact, by

carefully pointing out that the exercise of total control of the claim and the litigation by the insurance company created an fiduciary relationship between the insurance company and its insured, the Pennsylvania appellate courts have clearly recognized that there may be many circumstances where bad faith can arise from conduct other than the failure to accept a proffered offer of settlement within the policy limits.

Accordingly, this court cannot rule, as a matter of law, that the facts viewed in a light most favorable to the opponent of the motion for summary judgment create no circumstances under which a jury could be permitted to give that opponent relief. Hence, the motion for summary judgment should be denied.

## ORDER

And now, this March 19, 1986, upon consideration of defendant Keystone Insurance Company's motion for summary judgment, and the response thereto, after briefs and oral argument, it is hereby ordered and decreed that said motion is denied.