900 A.2d 341

**In re Appointment of Elizabeth RODRIGUEZ as a Constable in the Borough of Fountain Hill, Lehigh County, Pennsylvania.**

**Appeal of Elizabeth Rodriguez.**

Supreme Court of Pennsylvania.

Argued: April 7, 2003.

Decided Sept. 24, 2003.

Reconsideration Denied Dec. 8, 2003.

Joseph P. Maher, for Elizabeth Rodriguez, Appellant.

Steven M. Luksa, Allentown, James Bernard Martin, for the Com. of PA.

Before: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

## OPINION

JUSTICE LAMB.

In this case, we address the issue of whether the General Assembly intended Section 1 of the Act of March 20, 1929, P.L. 32, No. 32, 13 P.S. § 11, to abrogate the common-law rule that to hold the office of constable one must be a resident of the district in which he or she serves. For the following reasons we hold that it did not and affirm the order of the Commonwealth Court.

13 P.S. § 11 states:

Whenever a vacancy may occur in the office of constable in any borough, town, ward of any city, borough, or town or township in said Commonwealth by reason of failure to elect, failure to qualify, incompetency, death, resignation,

removal, or for any other cause, it shall be the duty of the court of quarter sessions of the peace [1] of the county in which such borough, city, ward, or township may lie, upon petition of not less than ten qualified electors residing in such borough, city, ward, or township to appoint a suitable person, who, upon being qualified as required by law, shall serve as the constable thereof for the unexpired term so vacant.

13 P.S. § 11 (footnote supplied).

On January 10, 2000, Appellant, Elizabeth Rodriguez, filed a Petition for Appointment as Constable in the Borough of Fountain Hill (Petition), along with a list of fifteen "qualified electors" residing in the Borough of Fountain Hill. On April 3, 2000, the Court of Common Pleas of Lehigh County held a hearing to evaluate the Petition.

At the hearing, the Lehigh County District Attorney's Office appeared on behalf of the Commonwealth in opposition to the Petition. The District Attorney maintained that because Appellant is not a resident of the Borough of Fountain Hill, Appellant is not a "suitable person" and is not "qualified as required by law" under 13 P.S. § 11, since residence in the borough to be served is a common-law requirement for the appointment of constable, citing the decision reported as *Plymouth Borough Constable*, 12 Pa.D. 188 (Quarter Sessions, Luzerne County, 1902). Appellant countered that since 13 P.S. § 11 is silent as to a residency requirement for the office of constable, the General Assembly intended that there be no such requirement, citing the opinion of the Court of Common Pleas of Chester County in *In re Request to Declare Vacancy for Office of Constable for the Precinct of Upper Oxford Township*, Chester County Civil Division, No. 94–07542 (1995) (holding that Section 1 of the Act of June 26, 1895, P.L. 375, 13 P.S. § 2, *repealed in part by* Section 1(e) of the Act of May 14, 1915, P.L. 312, ch. XIII, art. I, imposes no requirement "upon

---

1. The 1968 amendments to the Pennsylvania Constitution abolished the courts of oyer and terminer and general jail delivery, quarter sessions of the peace and orphans' courts and vested their jurisdiction in the courts of common pleas. Pa. Const. art. V, § 4; *see also* Pa. Const. art. V, §§ 5–6, 16–20.

an elected constable to reside in the municipality in which he or she was elected during the course of his or her term upon pain of forfeiting the office."). Appellant also argued that by promulgating a specific residency requirement for deputy constables in Section 1 of the Act of June 19, 1913, P.L. 534, 13 P.S. § 21, and not promulgating a specific residency requirement for constables in 13 P.S. § 11, the General Assembly intended that there be no residency requirement for constables.

By opinion and order dated May 17, 2000, the Court of Common Pleas of Lehigh County denied the Petition. The common pleas court concluded that there was a residency requirement for constables at common law, relying primarily on *Plymouth Borough Constable,*[2] and held that 13 P.S. § 11,

---

**2.** As evidence of the common law residency requirement, the common pleas court also cited *Commonwealth ex rel. Mueller v. Nye,* 44 Lanc. L.R. 389 (1934), and legal treatises dating from the eighteenth, nineteenth and early twentieth centuries:

> The position of constables has its roots in English common law and dates back to the time following the Norman Conquest, if not before. Willock, J.W., *The Office of Constable* (Philadelphia: 1840), Introduction; Pentz, Ross H. ed., *Binn's Justice, or Magistrate's Daily Companion,* Thirteenth edition (Philadelphia: 1932) at 296. Our review of numerous authorities reveals that residency was an express requirement for constabular office at common law.

> In a legal treatise published in 1722, which the author described as containing information "collected out of all books hitherto written [on the subjects contained therein]," the qualifications of constable were cited as follows:

>> He who is chosen Constable must be an honest, understanding and able Man, both in Body and Estate, and not of the meanor Sort; and therefore it has been held, That he is not to be chosen by House or by Custom, if not fit to execute his office.

>> *He is likewise to be resident where chosen,* and if he is not thus qualified two Justices upon Complaint, may appoint another.

>> . . .

>> If a Constable [die], or remove out of the Parish, two Justices may [choose] and swear another. . . .

> *The Office, Duty and Authority of Justice of the Peace, etc.* (Philadelphia: Printed and sold by Andrew Bradford 1722) at 54–55 (emphasis added). Likewise, it has been stated: "[N]or is any liable to serve the office of constable who is not such an inhabitant of the precinct for which he is appointed . . . because these are offices which, from the nature of their duty, require that the person should be well known and constantly present. . . . The person must be a resident in the

because it had not expressly abrogated the common-law rule, must be understood as having retained it. The court further held that the terms "suitable person" and "qualified as required by law," in the context of constable appointments, incorporated the pre-existing common-law residency requirement for constables into 13 P.S. § 11.

The Commonwealth Court affirmed the order of the Court of Common Pleas of Lehigh County, endorsing the common pleas court's rationale. *In re Appointment of Elizabeth Rodriguez as a Constable in the Borough of Fountain Hill, Lehigh County, Pennsylvania,* 791 A.2d 441 (Pa.Cmwlth.2002). Relying on *Plymouth Borough Constable* and the decision reported as *Fourth Ward Constable,* 20 Pa.D. 426 (Quarter Sessions, Fayette County, 1910), the Commonwealth Court agreed with the common pleas court that constables were subject to a residency requirement at common law and that 13 P.S. § 11 had not eliminated that requirement. Citing *Buradus v. General Cement Prods. Co.,* 356 Pa. 349, 52 A.2d 205 (1947), and *Central Lithograph Co. v. Eatmor Chocolate Co.,* 316 Pa. 300, 175 A. 697 (1934), the Commonwealth Court stated that a "common law rule is altered or abrogated only if the legislature specifically requires such a result", *In re Appointment of Rodriguez,* 791 A.2d at 443, and concluded that 13 P.S. § 11,

precinct for which he is to serve." Willock's *Office of Constable* at 14.

Other sources are also in accord. *See The King v. J. Adlard,* 4 Barn. & C. 772 (1825) (actual residence in the parish is essential to impose upon the occupier of property the burden of serving the office of constable); *Anonymous,* 10 Will. 3, 12 Mod. 256 (Case 459) (the appointment of constable must show that he is an inhabitant); 13 & 14 Car. 2, cap. 12, § 15 ("That in case any constable ... shall die, or go out of the parish, any two justices of the peace may make and swear a new constable ...").

In Dill's Constables' Guide, Dill, William F., *The Law of Constables in Pennsylvania,* 6 (Philadelphia: 1901) (*citing* P. & L., Twp. Officers, 5; 1834, P.L. 537, § 84), under the heading of "Qualification" of constables, the author writes: "Any qualified elector (voter) of the township, borough, or ward, for which he shall be chosen is eligible to the office of constable."

*In re Appointment of Elizabeth Rodriguez as a Constable in the Borough of Fountain Hill, Lehigh County, Pennsylvania,* Lehigh County Criminal Division, No.2000/0072-M (May 17, 2000), slip op. at 5–6 (alterations in original) (footnote omitted).

which is silent as to residency, can not therefore be construed as specifically abrogating the residency requirement for constables.

■ This Court granted allocatur to determine whether 13 P.S. § 11 abrogated the common-law rule that to hold the office of constable one must be a resident of the district in which he or she serves. Oral argument was heard on April 7, 2003. As with all conclusions of law, this Court's standard of review of the Commonwealth Court's decision is plenary. *See Commonwealth v. Nester*, 551 Pa. 157, 709 A.2d 879, 881 (1998); *Phillips v. A–Best Prods. Co.*, 542 Pa. 124, 665 A.2d 1167, 1170 (1995).

On appeal to this Court, Appellant renews her claims below that: (1) since 13 P.S. § 11 is silent as to a residency requirement for the office constable, the General Assembly intended that there be no such requirement; and (2) that by promulgating a specific residency requirement for deputy constables in 13 P.S. § 21 and not promulgating a specific residency requirement for constables in 13 P.S. § 11, the General Assembly intended that there be no residency requirement for constables.[3] Appellant therefore requests this Court to follow the analysis employed in *Upper Oxford Township, supra,* and *Formica v. Cross,* Chester County Civil Division, No. 98–00009 (1998).

In *Upper Oxford Township,* the Court of Common Pleas of Chester County addressed the issue of whether 13 P.S. § 2, which provides for the election of constables in boroughs and townships, contains a residency requirement. In determining that 13 P.S. § 2 contains no residency requirement for constables and concluding that the General Assembly was specifically aware of such, the court noted that under Section 1 of the Act of May 7, 1929, P.L. 1581, 13 P.S. § 31 (providing the grounds upon which an elected constable can be removed from office), the failure to maintain a residence in the district in which the constable is elected is not grounds for removal from

3. Appellant thereby essentially argues that this matter is controlled by the maxim *expressio unius est exclusio alterius.*

office, and that under 13 P.S. § 21, there is no specific residency requirement for deputy constables. As further evidence of the General Assembly's specific knowledge that 13 P.S. § 2 contained no residency requirement, the court noted the introduction of House Bill 2573 (1994 Session), which sought to add a residency requirement for both constables and deputy constables.[4] In *Formica*, the Court of Common Pleas of Chester County merely followed the decision in *Upper Oxford Township* on the same issue, noting that it was constrained to do so. *Formica*, slip op. at 1 n. 1 (citing *Yudacufski v. Pa. Dep't of Transp.*, 499 Pa. 605, 454 A.2d 923, 926 (1982) ("It is well-settled that, absent the most compelling circumstances, a judge should follow the decision of a colleague on the same court when based on the same set of facts.")).

Were it not for the existence in the Commonwealth of Pennsylvania of the common-law rule that to hold the office of constable one must be a resident of the district in which he or she serves,[5] Appellant would have a colorable argument. However, as previously and oft stated by this Court:

Whenever we are called to interpret a statute and determine the legislative intent, the analysis must necessarily begin with the Statutory Construction Act. 1 Pa.C.S. § 1921 et seq. Under that Act an implication alone cannot be interpreted as abrogating existing law. The legislature must affirmatively repeal existing law or specifically preempt accepted common law for prior law to be disregarded.

*Metropolitan Property and Liab. Ins. Co. v. Insurance Comm'r of Pa.*, 525 Pa. 306, 580 A.2d 300, 302 (1990); *see also Rahn v. Hess*, 378 Pa. 264, 106 A.2d 461, 464 (1954) ("Statutes

---

4. House Bill 2573 was not subsequently enacted.

5. See 1 Pa.C.S. § 1503, which provides:

(a) English law.—The common law and such of the statutes of England as were in force in the Province of Pennsylvania on May 14, 1776 and which were properly adapted to the circumstances of the inhabitants of this Commonwealth shall be deemed to have been in force in this Commonwealth from and after February 10, 1777. 1 Pa.C.S. § 1503(a).

are never presumed to make any innovation in the rules and principles of the common law or prior existing law beyond what is expressly declared in their provisions[.]") (citing *Szilagyi et al. v. Bethlehem*, 312 Pa. 260, 167 A. 782 (1933); *Gratz v. Insurance Co. of North America*, 282 Pa. 224, 127 A. 620 (1925)); *Buradus v. General Cement Prods. Co.*, 159 Pa.Super. 501, 48 A.2d 883, 886 (1946) ("In the absence of express declaration, the law presumes that the act did not intend to make any changes in the common law, for if the legislature had that design they would have expressed it."), *aff'd per curiam on basis of opinion of lower court*, 356 Pa. 349, 52 A.2d 205 (1947); *accord United States v. Texas*, 507 U.S. 529, 534, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993) ("In order to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law.") (quoting *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978)); *Wheaton v. Peters*, 33 U.S. 591, 691, 8 Pet. 591, 8 L.Ed. 1055 (1834) (Thompson, J., dissenting) ("If a thing is at common law, a statute cannot restrain it, unless it be in negative words."); *but cf.* 1 Pa.C.S. § 1928.[6]

■ Based on this principle of law, we must assume that the General Assembly understands the legal landscape upon which it toils, and we therefore expect the General Assembly to state clearly any intent to redesign that landscape. The General Assembly did not do so here. By its language, 13 P.S. § 11 expresses no clear intent to abrogate the common-law residency requirement for constables. We must therefore agree with the lower courts that because the General Assembly did not expressly abrogate the common-law rule, 13 P.S. § 11 must be understood as having retained it. Accordingly,

**6.** 1 Pa.C.S. § 1928 provides:
§ 1928. Rule of strict and liberal construction
(a) The rule that statutes in derogation of the common law are to be strictly construed, shall have no application to the statutes of this Commonwealth enacted finally after September 1, 1937.
1 Pa.C.S. § 1928(a). The General Assembly enacted 13 P.S. § 11 in 1929.

we can not apply the holding of *Upper Oxford Township* to 13 P.S. § 11.[7, 8]

Nowhere in her brief does Appellant even address the principle that in order for a statute to abrogate a common-law rule, the General Assembly must express a clear intent to do so. Instead, Appellant claims that the lower courts have acted as "super legislature[s] of sorts in imposing a residency requirement." Brief of Appellant at 9. Were this Court to ignore the common-law rule that to hold the office of constable one must be a resident of the district in which he or she serves, we would be the party guilty of acting as a "super legislature," by in effect re-writing 13 P.S. § 11 to exclude the residency requirement via judicial fiat.

The order of the Commonwealth Court is affirmed.

---

**7.** Unlike the instant case, in *Upper Oxford Township*, the Court of Common Pleas of Chester County was presented with the narrow issue of whether 13 P.S. § 2, by its express terms, contains a residency requirement in the context of the election of constables. It does not appear that any argument was made to the court regarding the common-law residency requirement for constables and the effect of such on the interpretation of 13 P.S. § 2. Nevertheless, we must still reject the reasoning of *Upper Oxford Township*, to the extent that it is inconsistent with our holding today.

**8.** Nor can we, as Appellant wishes us to, glean legislative intent from the General Assembly's mere proposal of House Bill 2753. *See* Brief of Appellant at 10. Appellant's argument is inapt as it requests that we focus not on the intent of the General Assembly when it enacted 13 P.S. § 11, but rather on the intent that can possibly be inferred from the proposal and subsequent rejection of a bill by a legislative body more than sixty years after 13 P.S. § 11 was enacted. *See generally Annenberg v. Commonwealth*, 562 Pa. 581, 757 A.2d 338, 347 (2000).