**[J-63-2014]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, STEVENS, JJ.**

| | | |
|---|---|---|
| ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, | : | No. 39 MAP 2014 |
| | : | |
| | : | |
| Appellant | : | Appeal from the Order granting Petition for Certification of Question of Law |
| | : | |
| v. | : | |
| | : | |
| JARED WOLFE, | : | |
| | : | |
| Appellee | : | SUBMITTED: July 18, 2014 |

**OPINION**

**MR. JUSTICE SAYLOR** **DECIDED: December 15, 2014**

We accepted certification from a federal appeals court to clarify whether, under Pennsylvania law, an insured may assign the right to recover damages from his insurance company deriving from the insurer's bad faith toward the insured.

In 2007, Jared Wolfe was injured when his vehicle was struck from behind by an automobile driven by Karl Zierle. Wolfe attributed blame to Zierle and demanded $25,000 from Zierle's insurer carrier, Appellant Allstate Property and Casualty Insurance Company, equating to half the liability limits under the applicable policy. Allstate counteroffered $1,200, which Wolfe refused.

Wolfe then instituted a personal injury action against Zierle seeking compensatory damages grounded in negligence. Allstate assumed Zierle's defense while maintaining its additional right, under the policy, to effectuate a settlement. <u>See</u>

Allstate Prop. & Cas. Ins. Co. Auto Policy, R.R. at 442a ("We may settle any claim or suit if we believe it is proper.").

In discovery, Wolfe confirmed that Zierle had been intoxicated at the time of the collision and secured leave of court to amend the complaint to advance a claim for punitive damages. Allstate, in turn, advised Zierle that indemnification for exemplary awards was unavailable under his policy and, therefore, Zierle might wish to consult with a personal attorney to address this aspect of the litigation.

Before trial, on at least one occasion, Wolfe again inquired into the possibility of settlement. Neither he nor Allstate made additional, material monetary concessions, however. A jury trial ensued, and Wolfe secured a verdict and judgment against Zierle comprised of $15,000 in compensatory damages and $50,000 in punitive damages. Allstate proceeded to satisfy the compensatory component of the judgment only. As to the punitive-damages portion, Wolfe and Zierle entered into an agreement whereby Wolfe committed to forbear from executing in exchange for an assignment from Zierle of all claims arising under the policy which he might possess against Allstate.

Relying upon this assignment, Wolfe proceeded to commence a civil action against Allstate in a Pennsylvania common pleas court, alleging that Allstate's refusal to settle reflected bad faith on the carrier's part. Wolfe sought damages under common-law contract theory, see Cowden v. Aetna Cas. & Sur. Co., 389 Pa. 459, 468, 134 A.2d 223, 227 (1957) (recognizing a cause of action grounded in contract theory for bad-faith refusal by an insurer to settle a third-party action),[1] and per Section 8371 of the Judicial

---

[1] See generally Toy v. Metro. Life Ins. Co., 593 Pa. 20, 39, 928 A.2d 186, 198 (2007) (explaining that, with Cowden, "Pennsylvania was joining the jurisdictions throughout the country that had held that an insurer may be liable for the entire amount of a judgment secured by a third party against the insured, regardless of any limitation in the policy, if the insurer's handling of the claim, including a failure to accept a proffered (…continued)

Code, 42 Pa.C.S. §8371, which served to supplement the remedies previously available to insureds in certain scenarios involving bad-faith conduct by their insurers, inter alia, by authorizing punitive-damages awards. See generally Birth Center v. St. Paul Cos. Inc., 567 Pa. 386, 402, 787 A.2d 376, 386 (2001).[2] Allstate removed the litigation to a federal district court.

During pretrial proceedings, Wolfe filed an amended complaint and Allstate pursued summary relief, asserting that, as a third party to the Allstate/Zierle insurance policy, Wolfe lacked standing to pursue damages under Section 8371. This position was grounded on two main premises. First, Allstate explained, under Ash v. Continental Insurance Co., 593 Pa. 523, 932 A.2d 877 (2007), Section 8371 created a form of an unliquidated tort claim. See id. at 536, 932 A.2d at 885 (holding, in determining the appropriate limitations period, that "an action under §8731 is a statutorily-created tort action"). Second, per longstanding Pennsylvania law, unliquidated tort claims generally are personal and cannot be assigned to third parties. See, e.g., Sensenig v. Pa. R.R. Co., 229 Pa. 168, 172, 78 A. 91, 91 (1910) ("A right of action strictly personal is not assignable and the general doctrine is, both in law and equity, that a right of action for pure tort is not the subject of assignment[.]"). Indeed, Allstate emphasized, two federal district judges in the Eastern District of Pennsylvania recently had applied these precepts in determining that claims for damages under Section 8371 are unassignable. See Feingold v. State Farm Mut. Auto. Ins. Co., Civ. No. 11-6309, slip op., 2012 WL

<hr>

(continued…)
settlement, was done in such a manner as to evidence bad faith on the part of the insurer in the discharge of its contractual duty").

[2] Wolfe also asserted a claim under the Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1 - 201-9.3, which is outside the scope of our present review.

1106653 (E.D. Pa. Apr. 3, 2012), aff'd, 517 Fed. Appx. 87 (3d Cir. 2013); Feingold v. Liberty Mut. Grp., 847 F. Supp. 2d 772 (E.D. Pa. 2012), aff'd, 562 Fed. Appx. 142 (3d Cir. 2014); accord Canale v. Allstate Ins. Co., No. 13-4398, slip op., (E.D. Pa. Nov. 21, 2013).

The district court rejected Allstate's contentions, however, relying upon a contrary pronouncement by the Superior Court in Brown v. Candelora, 708 A.2d 104 (Pa. Super. 1998). See Wolfe v. Allstate Prop. & Cas. Ins. Co., 877 F. Supp. 2d 228, 231 (M.D. Pa. 2012) (citing Brown, 708 A.2d at 110). The district court did not discuss Brown's reasoning or compare it with that of the Feingold courts. Rather, the district court merely observed that, in Haugh v. Allstate Insurance Co., 322 F.3d 227 (3d Cir. 2003), the United States Court of Appeals for the Third Circuit had cited Brown with approval. See id. at 239 ("Under Pennsylvania law an insured's claims . . . under section 8371 for punitive damages . . . are assignable." (citing Brown, 708 A.2d at 112)). This, the district court concluded, "rebuts [Allstate's] contention that a finding that §8371 claims sound in tort necessarily prohibits the assignment thereof." Wolfe, 877 F. Supp. 2d at 231.

The matter proceeded to trial, and a jury discerned bad-faith conduct on the part of Allstate. As relevant here, the jury awarded Wolfe $50,000 in punitive damages, as authorized under Section 8371.

Allstate commenced an appeal in the Third Circuit, in which the insurer maintained its position that Wolfe lacked standing. In light of the conflicting decisions in Pennsylvania and federal courts concerning the assignability of a right to damages under Section 8371, the Third Circuit lodged a certification petition in this Court, see Internal Operating Procedures of the Supreme Court §8, which we granted. See Allstate Prop. & Cas. Ins. Co. v. Wolfe, ___ Pa. ___, 90 A.3d 699 (2014) (per curiam).

Presently, Allstate maintains that the two, undisputed premises which it raised in the district court (resting upon Section 8371's grounding in tort theory and the personal character of unliquidated tort claims) dictate the outcome of our review. Allstate explains that the prohibition against assignment of tort claims has been interposed to preclude champerty, or the involvement of intermeddlers pursuing litigation for profit-making purposes. See, e.g., Marsh v. W. N.Y. & Pa. Ry. Co., 204 Pa. 229, 231, 53 A. 1001, 1002 (1903) ("'[N]o encouragement should be given to litigation by the introduction of parties to enforce those rights which others are not disposed to enforce.'" (quoting Prosser v. Edmonds, (1835) 160 Eng. Rep. 196, 203 (K.B.))). In this regard, Allstate categorizes assignees who have received judgments in third-party tort actions as such intermeddlers, since, according to the carrier at least, their only legitimate expectation is to be compensated for their own injuries. Observing that such singular interest can be wholly vindicated in an assignable contract-based action against the tortfeasor's insurer where there has been a bad-faith refusal to settle resulting in an excess verdict, see Cowden, 389 Pa. at 468, 134 A.2d at 227; Gray v. Nationwide Mut. Ins. Co., 422 Pa. 500, 511, 223 A.2d 8, 13 (1966), Allstate denominates attempts to assign exemplary entitlements under Section 8371 as champertous. In this line of argument, Allstate highlights that Pennsylvania courts have manifested a particular aversion to assignment of personal causes of action seeking penalties. See, e.g., Sensenig, 229 Pa. at 173, 78 A. at 92 ("Counsel for appellant practically admit that the treble damages imposed by the act of 1883 are to be regarded as a penalty, and that the right to such damages is not assignable."); Osborn v. First Nat'l Bank of Athens, 175 Pa. 494, 498-99, 34 A. 858, 859 (1896) (holding that the right to pursue a statutory penalty for charging usurious interest was unassignable).

Allstate recognizes that there are conflicting judicial decisions concerning the assignability of claims for damages asserted under Section 8371. Nevertheless, it views the disharmony as a byproduct of the controversy, prior to the 2007 decision in Ash, over whether such claims sounded in contract or tort. Again, it is Allstate's position that the definitive pronouncement in Ash settled the entire landscape.

In terms of public policy, Allstate believes that sanctioning assignments of punitive-damages claims under Section 8371 would foster mischief by encouraging plaintiffs to pursue unreasonable settlement demands and advance bad-faith claims which otherwise never would have been initiated. See, e.g., Reply Brief for Allstate at 3 ("[T]he inevitable consequence of allowing assignment of §8371 claims will be that persons bringing suits for injuries covered by a third party's insurance will have powerful incentives to be unreasonable in pretrial settlement negotiations."). According to Allstate:

> Prohibiting assignment of §8371 claims preserves a much better equilibrium among the interests of the various parties. The insured's right . . . to assign a common law contractual bad faith claim provides the insured with the bargaining chip to protect his personal assets from execution by the plaintiff. At the same time, assignment of the common law claim provides the plaintiff with a means to obtain the amount of the verdict – the only monies to which they the injured plaintiff has any legitimate claim. And, if the insured – the person §8371 is meant to protect – feels aggrieved by the insurer's actions, the insured can bring a claim under §8371. This is the truly fair result.

Id. at 6; accord id. at 8 ("Allowing the injured claimants to pursue the tort based claims under §8371 unreasonably tips [the] long established balance in favor of a party who needs no further protection."). Allstate's position, in these regards, is supported by its amici, including various insurance-industry organizations, which also view the assignment of claims for damages under Section 8371 as creating windfalls and

perverse incentives.[3]  Further, according to amici, by insulating the judicial proceedings from the presence of an insured bearing personal culpability (which, as in Zierle's case, can be substantial), assignments "will likely distort the factfinder's perception . . . by the inherent sympathies created by the innocent claimant's injuries."  Brief for Amici at 7.

Wolfe and his amici, on the other hand, eschew a "mechanistic rule" based purely on the tort label affixed to claims for damages under Section 8371.  Brief for Amicus United Policyholders at 17.  Rather, their arguments center on the public policies supporting this Court's determination that bad-faith claims grounded in contract theory are assignable.  See, e.g., Gray, 422 Pa. at 511, 223 A.2d at 13 (reasoning that assignability "would put the claimant on more of an equal footing with the insured's insurance company in settlement negotiations without tipping the balance against the insurer who can still refuse to settle in good faith"); Brown, 708 A.2d at 113 (positing that assignments "equalize[] the strategic advantages between the insured and the insurer," where the insurer's bad faith "exposes its policyholder to the sharp thrust of personal liability" (quoting Smith v. State Farm Mut. Auto. Ins. Co., 7 Cal. Rptr. 2d 131, 136 (Cal. Ct. App. 1992)))[.][4]  Along these lines, Wolfe and his amici contend that permitting assignment of the totality of an insured's rights against its insurer to an injured third-party plaintiff facilitates the orderly and complete determination of bad-faith

---

[3] See, e.g.. Brief for Amici Pa. Defense Inst., Phila. Ass'n of Defense Counsel, Ins. Fed. of Pa., Inc., Am. Ins. Ass'n, Prop. Cas. Insurers Ass'n of Am., and Pa. Ass'n of Mut. Ins. Cos. ("Brief for Amici") at 4-7; id. at 14-15 (predicting, if this Court sanctions the district court's approach to assignments, "a dramatic increase in litigation, as third-party claimants would sue for settlement delay and low offers, despite the lack of an excess verdict resulting in any exposure to the insured[,]" as well as a rise in insured losses which "may be passed along to policyholders in the form of higher premiums").

[4] Cf. Brief for Amicus United Policyholders at 23 ("The Legislature concluded that additional remedies were required to overcome insurance companies' inherent advantages in litigation expertise and resources to engage in coverage litigation[.]").

claims in a more unitary fashion.[5]  The amici, in particular, also note that this Court maintains an emphasis on the public policy favoring litigation settlements.  See, e.g., Brief for Amicus United Policyholders at 25 (citing Gray, 422 Pa. at 511, 223 A.2d at 13).

Furthermore, Wolfe contends, assignments serve Section 8371's aim of deterrence.  Cf. Brief for Amicus United Policyholders at 22 ("Punitive damages are intended to deter and punish bad faith, and those goals are served regardless of what party presses the claim against the insurance company.").  In this regard, Wolfe explains that many tortfeasors are essentially judgment-proof and, thus, lack the incentive to pursue damages under Section 8371 (since any resulting award would be vulnerable to seizure by the injured plaintiff in his capacity as judgment creditor).  Even though they may be judgment proof, the argument continues, insureds nonetheless suffer substantial harm by virtue of insurer bad faith, in the form of impaired credit ratings and, in some instances, downsides associated with insolvency proceedings.  See Gray, 422 Pa. at 506, 510, 223 A.2d at 10, 12 (discussing such considerations in determining that bad-faith claims grounded in contract theory are assignable).  Moreover, as Wolfe and his amici see it, the General Assembly already has rejected

---

[5] See, e.g., Brief for Wolfe at 11 ("Neither judicial economy nor any other significant public policy would be advanced by a rule permitting the assignment of common law contract rights against a carrie[r] to an injured plaintiff after entry of judgment, but requiring the policyholder themselves [sic] to bring a separate action seeking damages under [Section] 8371."); Brief for Amicus Pa. Ass'n for Justice at 8-9 ("Creating an artificial distinction between the contractual bad faith remedies and the statutory remedies with respect to assignments creates an unworkable and confusing dichotomy which otherwise confounds the orderly working of the insurance system in Pennsylvania."); Brief for Amicus United Policyholders at 21 ("[I]t would make no sense to treat statutory bad faith differently from common law bad faith where the conduct of the insurer at issue is the same under both the common law and the statute." (citing Birth Center, 567 Pa. at 410, 787 A.2d at 391)).

Allstate's position that compensatory damages for bad faith are sufficient to effectively combat bad faith on the part of insurance carriers. See, e.g., supra note 4.

According to Wolfe, "putting [the] claim into the hands of an injur[ed] plaintiff, already represented by counsel on the underlying claim, will . . . serve the [salutary] purposes of encouraging good faith settlement negotiations, and punishing insurance carrier abuse."  Brief for Wolfe at 15.[6]  Wolfe and his amici also dismiss Allstate's charge that a plaintiff taking an assignment engages in champerty, where it is the plaintiff's own personal injury action giving rise to an insured's bad-faith refusal to settle, and the plaintiff foregoes execution in exchange for the right to pursue the panoply of remedies available to redress such wrongful conduct.[7]

Finally, in discussing the legislative intent underlying Section 8371, amicus United Policyholders observes that, when the statute was enacted in 1990, the General Assembly was aware that, per the 1966 Gray decision, this Court had approved of the assignment of bad-faith claims for almost twenty-five years.  See generally Birth Center,

---

[6] Accord Brief for Amicus Pa. Ass'n for Justice at 14 ("Assignments permit the injured party an expeditious route to recovery, grant the insured leverage to protect its interest and provide the insurer with an incentive to act in good faith."); Brief for Amicus United Policyholders at 11 ("The right to make assignments protects the most financially vulnerable policyholders from opportunistic breaches by their insurance companies at the crucial moments when policyholders rightfully expect their insurers to protect them as their fiduciaries."); id. at 30 ("[T]he core problem with Allstate's and the Insurance Industry's effort to bar assignments of statutory bad faith claims is doing so would shield insurers from a range of important remedies the Legislature designed to further public policy whenever a policyholder or insured is not financially capable of resolving an excess verdict caused by the insurer's bad faith settlement practices.").

[7] Accord Brief for Amicus United Policyholders at 21 ("[The plaintiff] is directly affected by the insurer's bad faith in failing to assist the policyholder in an earlier settlement, not an officious gambler with nothing at stake."); id. at 20 ("[W]hether a bad faith claim is characterized as an action in tort or contract or both, vague assertions that public policy would be harmed by assignment of these claims due to 'promotion of champerty,' have not been borne out over years of experience with these assignments.").

567 Pa. at 403-04, 787 A.2d at 387 (applying a conventional principle of statutory construction in presuming that the legislative branch was familiar with the judicial decisions arising in the bad-faith context at the time Section 8371 was enacted). Thus, amicus asserts, if the Assembly had any concerns that statutory bad faith claims should not be assignable along with the common-law claims, it would have so indicated in the statute itself.

Upon consideration of the arguments presented, we agree with the proposition that the most appropriate way to approach the assignability issue is as a matter of statutory construction. Thus, the essential undertaking is to determine the intent of the Legislature through the language of its prescriptions, where possible. See 1 Pa.C.S. §1921(a), (b). Where the words of a statute are not explicit, we employ principles of statutory construction, including, among other considerations: evaluation of the occasion and necessity for the statute under review, contemplation of the object to be attained, review of the previous legal landscape, and appreciation of the consequences of the particular interpretation. See id. §1921(c)(1), (4)-(6). In terms of the former law, this Court continues to highlight the importance of considering the extant common law at the time of a statute's enactment. See, e.g., In re Rodriguez, 587 Pa. 408, 414–15, 900 A.2d 341, 344–45 (2003).

Section 8371 provides, in relevant part:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may . . . [a]ward punitive damages against the insurer.

42 Pa.C.S. §8371. Since the statute says nothing about assignability of claims asserted per its provisions, we find that principles of statutory construction should apply.

The suggestion on Allstate's side, particularly from its <u>amici</u>, is that statutory causes of action, by their nature, are allocated to particular interests by the Legislature, and, thus, transfers should not be sanctioned by the courts in the absence of express legislative approval. A countervailing circumstance here, however, is that the opening passage of Section 8371 -- "[i]n an action arising under an insurance policy" -- interweaves the statutory remedial scheme into the array of contract-based actions which already were assignable under the extant common law as of Section 8371's enactment. <u>See</u> <u>Gray</u>, 422 Pa. at 511, 223 A.2d at 13. As such, to the degree that Section 8371 is regarded as "merely provid[ing] an additional remedy and authoriz[ing] the award of additional damages," <u>Birth Center</u>, 567 Pa. at 402, 787 A.2d at 386, this would seem to be a simple case. Per this line of reasoning, the Legislature's mere supplementation of remedies should not be deemed to evince an unstated desire to disrupt the pre-existing degree of latitude in the assignment of underlying actions or to require the splitting of causes of action (a practice which is strongly disfavored, <u>see</u> Pa.R.C.P. No. 1020(d)).

The complexity arises, however, on account of the character of the statutory supplemental remedies involved. In designing Section 8371, the Legislature apparently was satisfied to leave in place the contract overlay which this Court had imposed on insurance bad-faith litigation, <u>see</u> <u>Gray</u>, 422 Pa. at 508, 223 A.2d at 11,[8] but it chose to

---

[8] We realize that, conceptually, such overlay is by no means the only reasonable treatment, and a number of other jurisdictions have recognized a common-law cause of action grounded in tort theory arising out of bad-faith conduct of insurance companies directed toward their insureds. <u>See</u>, <u>e.g.</u>, <u>Gruenberg v. Aetna Ins. Co.</u>, 510 P.2d 1032, 1037 (Cal. 1973); <u>cf.</u> <u>Birth Center</u>, 567 Pa. at 410-14, 787 A.2d at 391-93 (Zappala, J., dissenting, joined by Castille, J.) (positing that claims for bad-faith refusal to settle by insurers sound in tort). Relative to underlying principles, however, our decision today is constructed on the foundation of the present state of the law as it has developed in Pennsylvania.

interpose additional conventions typically associated with tort law, see Ash, 593 Pa. at 536, 932 A.2d at 885. This aspect obviously puts into play the axioms upon which Allstate quite reasonably relies.

We recognize that the policy considerations (which are ably developed in the arguments of the litigants and their amici) are mixed in character. On balance, however, we find that consideration of the occasion and necessity for Section 8371, the object to be attained, the previous legal landscape, as well as the consequences of our interpretation, favor Wolfe's position. Centrally, we simply do not believe the General Assembly contemplated that the supplementation of the redress available for bad faith on the part of insurance carriers in relation to their insureds would result either in a curtailment of assignments of pre-existing causes of action in connection with settlements or the splitting of actions. Certainly, if we are incorrect in our assessment in this regard, the General Assembly may seek to implement curative measures pertaining to future cases, subject to constitutional limitations.[9]

We conclude that the entitlement to assert damages under Section 8371 may be assigned by an insured to an injured plaintiff and judgment creditor such as Wolfe. Having answered the certified question, we return the matter to the Third Circuit.

Messrs. Justice Eakin and Baer, Madame Justice Todd and Mr. Justice Stevens join the opinion.

Mr. Chief Justice Castille dissents.

---

[9] Obviously, we have not undertaken to consider whether assignments should be viewed as substantive or procedural for separation-of-powers purposes, see PA. CONST. art. V, §10(c) (delegating procedural rulemaking authority to this Court), because it is beyond the scope of our present inquiry. Our fundamental conclusion here is, simply, that we discern no legislative intent to preclude assignability of damages claims under Section 8371 to the degree these have been reposited into a pre-existing liability scheme which permits assignments.