J-A18019-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ROY TRUSS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: ROY TRUSS | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1341 EDA 2018 |

Appeal from the Order May 12, 2017
In the Court of Common Pleas of Northampton County Civil Division at
No(s): CP-48-MD-0002091-2015

BEFORE: STABILE, J., STEVENS\*, P.J.E., and STRASSBURGER\*\*, J.

MEMORANDUM BY STEVENS, P.J.E.: **FILED SEPTEMBER 24, 2018**

Roy Truss appeals from the May 12, 2017, order entered in the Court of

Common Pleas of Northampton County, which removed him from his elected

position as Constable for Moore Township, Northampton County. After a

careful review, we affirm.

The relevant facts and procedural history have been set forth by the

Honorable Stephen G. Baratta, the President Judge of the Court of Common

Pleas of Northampton County, in part, as follows:

> On January 31, 2017, Deputy Court Administrator for
> Northampton County, Debra French, received competing
> complaints from Constable Roy Truss ("Truss") and Deputy
> Constable Matthew Toso ("Toso"). Truss sought to terminate Toso
> for insubordination. Toso alleged that Truss failed to maintain
> residency within his elected municipality, and further, that Truss
> had harassed him on numerous occasions.
>
> On February 10, 2017, Northampton County Constable
> Douglas Fulmer filed a second complaint against Truss, also

_____
\* Former Justice specially assigned to the Superior Court.
\*\* Retired Senior Judge assigned to the Superior Court.

asserting that Truss did not reside within the District to which he was elected.

This matter was submitted to the Constable Review Board [] for a hearing.[1] On March 21, 2017, the Board conducted a full hearing. Truss and Toso fully participated in the March 21 hearing; Constable Fulmer failed to appear. Following receipt of testimony and related exhibits, the Board deliberated and unanimously agreed to enter Findings and Recommendations. The Recommendations included that:

(1)    Truss should be removed as Constable because he failed to maintain residency in Moore Township as required…for the period of May 2016 through the date the complaint was filed on January 31, 2017;

(2)    Truss should be removed as Constable because he engaged in a pattern of harassment directed against Toso; and,

(3)    The complaint filed by Truss against Toso should be dismissed as Truss was unable to meet his burden of proof.

Trial Court Order, filed 5/12/17, at 2 (footnote added).[2]

Thereafter, President Judge Baratta reviewed the detailed findings and recommendations submitted by the Board, the March 21, 2017, transcript, and the exhibits. Trial Court Opinion, filed 7/12/17, at 2. With regard to the factual findings, President Judge Baratta indicated the following:

_____

[1] President Judge Baratta indicated that, after the Court Administrator received the complaints, he referred the complaints to the Northampton County Constable Review Board, which was established via a local rule of court on October 18, 2016. Trial Court Opinion, filed 7/12/17, at 1-2.

[2] President Judge Baratta noted the Board made no separate recommendation as to Constable Fulmer's complaint. Trial Court Opinion, filed 5/12/17, at 2 n.1.

Truss was elected in November of 2015 and installed in 2016 as Constable for Moore Township, Northampton County. At the time of his election, he was living in an apartment at [] West Best Road, Moore Township, PA.

During his testimony, Constable Truss acknowledged that in May of 2016, his roommates had evicted him from their shared apartment located at [] West Best Road and that he then moved out of his district to [] West Main Street, Bath, [PA]. After the instant complaints were filed against him, Truss returned to live in his district at [] Valley View Drive, Moore Township, on February 15, 2017.

\*\*\*

The factual record [further] established the following: Truss acknowledged that he was not doing any constable work for the courts because he does not have a bond or liability insurance filed with the Criminal Division. While Truss stated that he did not want to work for the courts, he was hoping, once he gets liability insurance, to work for Domestic Relations.

The record also established that on November 16, 2016, [the trial court] appointed Toso to be a deputy constable based upon the petition of Truss, in which he claimed to be laboring under a heavy workload regarding the service of paper work, for which he needed assistance. Obviously, it was a false representation to [the trial court], as Truss was performing no court related constable work [at this time].

The hearing record also includes testimony and exhibits regarding serial text messages sent by Truss to Toso, some of which were sent at odd hours, which…constituted "general" harassment given both the content (non-work related) and the frequency of the messaging. In addition, some of the text messages contain very explicit sexual discussions and propositions. During his testimony, Truss admitted that he contacted Toso and requested the opportunity to perform oral sex on Toso. Truss also admitted that after Toso declined the offer, that Truss provided Toso with a "notice of termination" related to constable work.

The [trial court] found such communication to constitute sexual harassment. [The trial court] also [found] that the notice of termination constituted workplace retaliation.

In addition, Truss also presented photos from text messages allegedly sent to him by Toso, which depicted Toso in various

- 3 -

stages of undress, including one which purported to show Toso's erect penis….[At the hearing,] while Toso acknowledged that he posted pictures on Instagram, he denied that they were sent to Truss in text messages. Toso suggested that Truss somehow managed to capture his photographs[,] which were meant to be "private," even though Toso did distribute them to others on a social media platform. In addition, Toso questioned the authenticity of one of the photos, the one alleged to depict his genitalia.

Trial Court Order, filed 5/12/17, at 3, 6-7.

Based on the aforementioned, in an order entered on May 12, 2017, President Judge Baratta directed the removal of Truss from his elected position as constable for Moore Township due to Truss's "(1) failure to maintain residency in Moore Township; and (2) [] incompetence and malfeasance in the performance and discharge of his duties as constable for Moore Township."[3]  *Id.* at 1.  In support thereof, the trial court reasoned:

[I]n order for Truss to hold the elected office of Constable for Moore Township, he must reside within the municipality. Truss, by his own testimony, admitted that as of the date the Complaint was filed against him by Toso, he had been living outside [of] Moore Township as far back as May of 2016, when he was evicted from his apartment.

\*\*\*

Toso was a subordinate of Constable Truss serving as deputy constable.  We find that the general harassment, and especially the sexual harassment, committed by Truss against his subordinate was improper, met the elements of the criminal

---

[3] President Judge Baratta indicated there was no evidence supporting Truss's claim of insubordination as it related to Toso; however, since Toso was appointed as Deputy Constable at the request of Truss, President Judge Baratta held "the November 16, 2016, order appointing [] Toso is vacated by operation of law, as [] Toso's authority was wholly derivative of [] Truss's service." *Id.* at 1.

- 4 -

offense of harassment (a misdemeanor 3), created a hostile work environment, and violated the criteria of professionalism required of all Constables under Standards (3) and (7) found in Section III of the Pennsylvania Unified Judicial System's Constable Policies, Procedures, and Standards of Conduct. We find that these violations also establish that Truss is incompetent to properly discharge his official duties as required under 44 Pa.C.S.A. § 7172.

Trial Court Order, filed 5/12/17, at 4, 7 (footnote omitted).[4]

Truss filed a timely notice of appeal to the Commonwealth Court, and all Pa.R.A.P. 1925 requirements were met.

Subsequently, Truss filed in the Commonwealth Court a motion to transfer the case to our Supreme Court. Therein, Truss alleged the Pennsylvania Supreme Court had exclusive appellate jurisdiction over his case pursuant to Section 722(2) of the Judicial Code[5] since it involved his removal from public office.

In an unpublished memorandum, the Commonwealth Court declined Truss's request to transfer his appeal to the Supreme Court; however, the

---

[4] In separate orders, President Judge Baratta directed that all exhibits received by the Board should be officially marked as exhibits. Also, the President Judge indicated that he took judicial notice of the Administrative Order of October 18, 2016, which established the Board, as well as the Pennsylvania Unified Judicial System Constable Policies, Procedures, and Standard of Conduct from the Administrative Office of Pennsylvania Courts ("AOPC").

[5] Section 722(2) of the Judicial Code provides that "[t]he Supreme Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas" in cases involving "[t]he right to public office." 42 Pa.C.S.A. § 722(2).

Commonwealth Court concluded that appellate jurisdiction more properly lay with this Court. *In re: Roy Truss*, 779 C.D. 2017 (Pa.Cmwlth. 4/18/18) (unpublished memorandum).

Specifically, the Commonwealth Court reasoned the Supreme Court does not have exclusive appellate jurisdiction over the removal of Truss from his position since "there is nothing in the record to suggest that the office of constable relates to the exercise of any policy-making authority[.]"[6] *Id.* at 3. Further, the Commonwealth Court reasoned that, since the Superior Court generally has "exclusive original jurisdiction over appeals from orders of the courts of common pleas," and this Court has routinely exercised jurisdiction over appeals involving such removal actions, jurisdiction more properly lay with this Court. *Id.* at 3-4. On May 15, 2018, this Court accepted transfer of the appeal from the Commonwealth Court.

On May 21, 2018, Truss filed in this Court an application to transfer his case to the Supreme Court on the basis the Supreme Court has exclusive

---

[6] In this regard, the Commonwealth Court noted that, in *Commonwealth v. Spano*, 549 Pa. 501, 701 A.2d 566, 567 n.4 (Pa. 1997), our Supreme Court held "public office" is defined as an "elective or appointive position in which the incumbent is exercising a governmental function which involves a measure of policy making and which is of general public importance." Thus, since the parties in *Spano* pointed to nothing in the record to suggest the elected borough constable exercised any policy-making authority, the Supreme Court concluded that jurisdiction over an appeal from a trial court order with regard thereto is vested in the Superior Court.

appellate jurisdiction over his removal from office. In a *per curiam* order entered on June 8, 2018, we indicated:

> The Application to Transfer is hereby DENIED. This appeal was taken from an order of the trial court that removed [Truss] from his elected office as constable. This Court has jurisdiction to address this appeal pursuant to **Commonwealth v. Spano**, 701 A.2d 566 (Pa. 1997) (right to appeal removal from office of borough constable is fully protected by appeal to the Superior Court). This appeal does not belong before the Supreme Court despite 42 Pa.C.S.A. § 722(2) (direct appeal from court of common pleas) because [] a constable does not have policy-making decisions to constitute it as a "public office." **See Rastall v. DeBouse**, 736 A.2d 756 (Pa.Cmwlth. 1999) (distinguishing **Spano** in finding that an appeal by an appointee to the redevelopment authority was to be transferred to the Supreme Court)).

On appeal, Truss sets forth the following issues in his Statement of Questions Involved (verbatim):

A. Because this appeal involves the right to hold public office, should this case be transferred to the Pennsylvania Supreme Court?

B. Do the powers of a Constable Review Board include recommending removal from office?

C. Does a Court of Common Pleas [*sic*] the legal authority to invoke 44 Pa.C.S.A. § 7172 (and thus to remove a Constable from office) by relying solely on a Constable Review Board's "Findings and Recommendation"?

Truss's Brief at 12.

In his first issue, Truss argues our Supreme Court has exclusive jurisdiction over the instant matter since it involves his removal from public office. However, as previously set forth by our sister court, as well as this Court in a *per curiam* order, this Court is properly vested with jurisdiction in

this matter. **See also Spano**, **supra**. Accordingly, we decline to address this claim further.

Truss's second and third issues are intertwined. Initially, Truss contends the Northampton County Constable Review Board exceeded its authority by inquiring into matters that did not relate to the performance of Truss's judicial duties as a constable, as well as ultimately recommending his removal from office (as opposed to recommending that the trial court not use his services). He admits 44 Pa.C.S.A. § 7172 permits a court of common pleas to remove a constable from office under certain circumstances.

However, he contends President Judge Baratta erred in removing him from office pursuant to Section 7172 since the President Judge did not hold a hearing, relied "exclusively" on the formal recommendation of the Board, and did not limit his inquiry to Truss's "official conduct." Truss further suggests the President Judge erred in relying upon Section 7172 because Toso commenced the instant matter via the filing of a "complaint" as opposed to a "verified petition."

As a prefatory matter, we note that because the issues on appeal concern the interpretation of court rules and statutes, the issues are a question of law, over which our review is plenary. **In re: Petition to Remove Constable Visoski**, 852 A.2d 345 (Pa.Super. 2004).

By way of background, our Supreme Court promulgated Pa.R.J.A. No. 1907.2, which provides the following with regard to constables:

**Rule 1907.2. Policies, Procedures and Standards of Conduct**

**(a)** The Court Administrator shall establish uniform policies, procedures and standards of conduct for constables who perform services for the courts. These policies, procedures and standards of conduct shall be mandatory for all judicial districts and constables engaged to perform services for any court of the unified judicial system.

**(b)** The president judge of a judicial district is authorized to enact policies and procedures consistent with those established by the Court Administrator in section (a) as local rules pursuant to Pa.R.J.A. No. 103(c). Any policies and procedures enacted by the president judge of a judicial district that may deviate from the uniform policies, procedures and standard of conduct for constables established by the Court Administrator must be approved by the Court Administrator before promulgation. *See* Pa.R.J.A. No. 505(a).

**(c)** President Judges are responsible for implementing the provisions set forth in this rule within their respective judicial districts.

> *Comment:* Constables are independent contractors, belonging analytically to the executive branch of government. *In re Act 147 of 1990*, 528 Pa. 460, 598 A.2d 985 (1991). Constables are defined as "related staff" under the Judicial Code. *Rosenwald v. Barbieri*, 501 Pa. 563, 462 A.2d 644 (1983). While these Rules are established pursuant to Pa. Const. Art. V, § 10(c), nothing herein, or in any document created under these Rules, shall be construed to alter the status of constables as independent contractors and related staff.

Pa.R.J.A. No. 1907.2.

As Truss points out, in response to Pa.R.J.A. No. 1907.2, the AOPC established "Constable Polices, Procedures and Standards of Conduct." Relevantly, therein, AOPC provided:

**Constable Review Board**

President Judges may authorize the creation of an advisory board called a Constable Review Board (CRB) to assist in resolving any disputes related to a constable's performance of judicial duties. If a CRB is created, the President Judge, in consultation with relevant county officials, should develop filing procedures and guidelines, including notice and opportunity to be heard, and timetables for decisions.

The CRB may receive complaints by or against constables regarding the performance of judicial duties, financial/payment disputes or other matters relevant to a constable's services to the courts. The CRB may then make recommendations to the President Judge regarding the judiciary's continued use of the constable's services, or to the county controller/county executive if the dispute concerns financial or other matters within the county's control.

Any findings of suspected criminal activity shall be forwarded to the county District Attorney. The President Judge shall be notified of any referrals to the District Attorney and shall determine if a constable's services should continue to be used.

It is recommended that membership on a CRB include:

- A Judge of the Court of Common Pleas or Magisterial District Judge
- The District Court Administrator or Special Courts Administrator
- A Certified Constable and an alternate to be used in case of conflict
- The County Controller or his or her designee.

AOPC "Constable Policies, Procedures and Standards of Conduct," May 2013, at 5 (footnote omitted).

Thereafter, by administrative order entered on October 18, 2016, the Northampton County Constable Review Board was created. With regard to the Board, the Northampton County local rules relevantly provide:

**Rule 2. Scope.**

\*\*\*

- 10 -

**b.** Consistent with the Pennsylvania Unified Judicial System's Constable Policies, Procedures and Standards of Conduct, the Constable Review Board may receive complaints by or against constables regarding:

**1.** the performance of judicial duties;

**2.** payment of constable fees and other financial disputes related to the work of a constable; and

**3.** other matters relevant to the constable's judicial duties.

**c.** The Constable Review Board does not have the authority to revise the Constable Policies, Procedures and Standards of Conduct issued by the [AOPC].

**d.** Nothing in these rules precludes any person, judicial officer, governmental officer or surety of a constable from filing a verified petition in accordance with 44 Pa.C.S. § 7172, alleging that a constable is incompetent to discharge official duties.

**Rule 3. Authority**

**a.** The Constable Review Board may make recommendations to the President Judge regarding the judiciary's continued use of a constable's services.

**b.** If a matter involves a financial dispute or other matter within Northampton County's control, the Constable Review Board may make recommendations to the Northampton County Executive regarding payment for services.

**c.** The Constable Review Board shall forward any findings of suspected criminal activity to the Northampton County District Attorney.

**d.** The President Judge remains the ultimate authority with regard to a constable's performance of judicial duties within the Third Judicial District. In that respect, the President Judge may, at any time, temporarily place a moratorium on the use of a particular constable while awaiting review and recommendation of the Constable Review Board on any pending complaint.

Northampton County Administrative Order No. 2016-4 (filed 10/18/16).

Further, 44 Pa.C.S.A. § 7172, to which President Judge Baratta cited in

removing Truss from office, provides the following:

- 11 -

**§ 7172. Incompetence**

(a) **Inquiry.**--A court of common pleas with competent jurisdiction may inquire into the official conduct of the constable if any of the following apply:

(1) A surety of the constable files a verified petition alleging that the constable is incompetent to discharge official duties because of intemperance or neglect of duty.

(2) Any person files a verified petition alleging that the constable is incompetent to discharge official duties for a reason other than intemperance or neglect of duty. This paragraph includes an act of oppression of a litigant or a witness.

(b) **Determination.**--If the court determines that the constable is incompetent to discharge official duties, the following apply:

(1) The court may:

(i) require additional security from the constable; or

(ii) remove the constable from office.

(2) Upon removal under paragraph (1)(ii), the court may appoint a suitable individual to fill the vacancy until a successor is elected and qualified. The appointed individual must have a freehold estate with at least $1,000 beyond incumbrance or furnish security.

44 Pa.C.S.A. § 7172.

As indicated *supra*, in the instant case, this matter was instituted when a complaint was filed against Truss with the Northampton County Court Administrator. The President Judge referred the matter to the Board, which held a hearing on March 21, 2017, received exhibits, and issued a recommendation.

Thereafter, the President Judge conducted a full review of the transcript and exhibits from the March 21, 2017, hearing, as well as reviewed the Board's recommendation. The President Judge, acting as the ultimate authority in this case, rendered the decision that Truss be removed from office due to (1) his failure to maintain residency in Moore Township, and (2) incompetence and malfeasance in the performance and discharge of his duties as a constable.

We conclude the President Judge had the authority to remove Truss from office due to his failure to maintain residency in Moore Township, and thus, we affirm on this basis.[7]

Residence in the district to which a constable is elected is a common-law requirement. *See In re Rodriguez*, 587 Pa. 408, 900 A.2d 341 (2003). In enacting the current statutes related to constables, *see* 44 Pa.C.S.A. §§ 7101-7178, our legislature did not expressly abrogate the common-law rule, and thus, we conclude the legislature intended to retain it. *See id.* We find our Supreme Court's opinion in *In re Rodriguez* to be instructive. Specifically, in *In re Rodriguez*, our Supreme Court held:

> Whenever we are called to interpret a statute and determine the legislative intent, the analysis must necessarily begin with the Statutory Construction Act. Under that Act an implication alone cannot be interpreted as abrogating existing law. The legislature must affirmatively repeal existing law or specifically preempt accepted common law for prior law to be disregarded.

---

[7] As we may affirm on any ground, we need not analyze whether Truss was properly removed from office based on the alternate ground provided by President Judge Baratta. *See Blumenstock v. Gibson*, 811 A.2d 1029 (Pa.Super. 2002).

\*\*\*

Based on this principle of law, we must assume that the General Assembly understands the legal landscape upon which it toils, and we therefore expect the General Assembly to state clearly any intent to redesign that landscape. The General Assembly did not do so here. By its language, [the statute] expresses no clear intent to abrogate the common-law residency requirement for constables. We must therefore agree with the lower courts that because the General Assembly did not expressly abrogate the common-law rule, [the statute] must be understood as having retained it.

*Id.* at 414-15 (citation omitted).

In the case *sub judice*, Truss does not dispute that he did not maintain the residency requirement after he was elected as constable in Moore Township. Thus, inasmuch as the legislature has not expressly abrogated the common-law residency requirement, we conclude President Judge Baratta had the authority to remove Truss from office for violating the residency requirement.

Truss suggests the Board exceeded its authority as to its inquiry and recommendation, and the President Judge erred in relying "exclusively" on the formal recommendation of the Board. However, as the President Judge noted, the Board acted in an advisory capacity. The President Judge reviewed the entire record and, as was within his sole province, removed Truss from office.

Moreover, to the extent Truss contends the trial court was required to hold a hearing prior to removing Truss from office, we note the Board conducted a full hearing, upon which the trial court relied. Truss has not

- 14 -

explained how he was prejudiced or denied a full opportunity to be heard in this regard.

Finally, to the extent Truss contends President Judge Baratta could not invoke Section 7172 to order his removal from office absent the filing of a "verified petition," we note that Toso filed a complaint, which bears his signature, in which he averred:

> All the information that has been provided in this documentation is on my own free will and accord and intended for the use of investigation of Mr. Truss and review for the following parties: Honorable President Judge Baratta, the Northampton County District Attorney Office, the Northampton County Sheriff's Office, Debra French, and the Constable Review Board for the 3rd Judicial District of Pennsylvania.

Toso's Complaint, filed 1/31/17, at 3.

Truss has not developed his issue further. Accordingly, we decline to find that any formal errors in the verification prevented consideration of the complaint under Section 7172. *See generally Monroe Contract Corp. v. Harrison Square, Inc.*, 405 A.2d 954, 958 (Pa.Super. 1979) (*en banc*) (holding a document's verification "must not be transferred into an offensive weapon designed to strike down an otherwise valid petition").

For all of the foregoing reasons, we affirm.[8]

Affirmed.

---

[8] Appellant filed an Application to File a Supplement to the Record. Specifically, he sought to supplement the record with relevant Northampton County Local Rules. As the record already includes the Rules, we deny Appellant's Application as moot.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>9/24/18</u>